JOHN BAHR, PLAINTIFF IN ERROR, v. LOMBARD, AYRES & CO., DEFENDANTS IN ERROR.

1. As a general rule, the proof of the occurrence of an accident does not raise a presumption of negligence.
2. Where the testimony which proves the occurrence by which the plaintiff was injured discloses circumstances from which the negligent conduct of the defendant is a reasonable inference, a case is presented which calls for a defence.
3. If, however, the plaintiff's case shows him to be possessed of material but undisclosed evidence, the mere proof of the occurrence of an acci-

dent raises no presumption of negligence, to rebut which the defend--
ant can be called upon to offer testimony.

4. *Res ipsa loquitur* commented upon and applied.

On error to the Hudson Circuit Court.

For the plaintiff in error, *William F. Abbett* and *Leon Abbett.*

For the defendants in error, *Bedle, Muirheid & McGee.*

The opinion of the court was delivered by

GARRISON, J.   The plaintiff was a servant of the defend-
ants in the business of refining crude oil, and while at work
upon his employers' premises received injuries, to recover
damages for which this action was brought.   The occurrence
by which he was injured is thus described by the plaintiff, the
only witness thereto :  " On August 21st, 1882, a pipe which
was being fixed exploded and threw me into the yard ;. I came
around from the stills ; if the stills don't run properly I have
to see to the fires and open the drafts ; I saw two men standing
there, but I didn't take any notice of what they were doing ;
I didn't hear that these men said anything to me ; when I
went into the tail-house I had a thermometer with me ; just
as I was going to put it down there was a terrible explosion,
like the report of a gun, and threw me out of the tail-house,
and the cap from my head, and my hair and my beard, and
everything, was burned away ; I didn't know then what I
was doing ; I ran out, in my great fear, and the fire came fly-
ing out of the building."   Upon cross-examination, these
questions were put and answered :

"*Q.* What was the pipe that exploded used for ?'

"*A.* Used for conducting the oil from the crude stills to
the other stills.

"*Q.* Did the pipe which exploded run into the still-house,
where you were working ?

"*A.* No.

"*Q.* Did your work have anything to do with that pipe?

"*A.* Nothing at all.

"*Q.* You said that this pipe exploded; how do you know that?

"*A.* The walls had been thrown away and one of the tanks was moved.

"*Q.* You mean that there was an explosion, but you don't know that the pipe exploded, do you?

"*A.* Perhaps somebody else would know that.

"*Q.* Did you see it?

"*A.* No, I didn't see that.

"*Q.* Don't you know that the pipe was not broken?

"*A.* I don't know whether it was broken.

"*Q.* Then you do not feel sure just what was the immediate cause of the accident, do you?

"*A.* I heard that the pipe exploded; some people told me that this pipe exploded, and that it had been taken away from its original position and put into another position.

"*Q.* Then all you know about the explosion is that an explosion occurred, and somebody told you that this pipe exploded, and, therefore, you think that was so?

"*A.* Yes.

"*Q.* If oil leaks into the ground it generally forms a gas, don't it?

"*A.* Yes.

"*Q.* And that gas, if it comes in contact with the fire, will explode?

"*A.* Yes.

"*Q.* Those pipes frequently get to leaking, don't they?

"*A.* They don't leak very often; sometimes; yes, a little.

"*Q.* Were not these two men that you speak of trying to find out what was the matter, and where the leak was?

"*A.* I didn't see anything about that.

"*Q.* Who were these two men?

"*A.* Tom Winter and Mike Bernard.

"*Q.* Isn't it likely that the explosion was caused by gas,

formed from the oil which saturated the earth, and which gas came in contact with the fire and then exploded?

"*A.* I cannot insist upon that."

The foregoing is all of the testimony which, at the close of the plaintiff's case, had been given as to the occurrence of the accident, or that in any way bore upon the negligence of the defendants in respect to it.

In this state of the proofs, the trial court directed a non-suit, upon the ground that a judgment against the defendants could not be sustained by this evidence. The main stress of the argument before us to take off this non-suit was upon the duty which an employer owes to his servants, a subject to which plaintiff's brief was almost wholly directed, and in respect to which conclusions were reached in entire harmony with the accepted rule of law, viz., that employers must adopt and maintain all reasonable means for the safety of their servants while at work. The plaintiff's case, however, was withdrawn from the jury, not from any misapprehension as to this rule of law, but because there was, in the opinion of the trial court, no testimony as to any fact by which the conduct of these employers towards this servant could be ascertained. When, in an action for negligence, the standard of duty can be predicated as matter of law, the only question for the jury is, whether the conduct of the defendant fell short of that standard. What the conduct of the defendant was must appear in the case. If, from the facts in evidence, two inferences as to the defendants' conduct may legitimately be drawn, one favorable and the other unfavorable to its negligence, a question is presented which calls for the opinion of a jury. If, however, there is no proof of any fact by which the conduct of the defendant can be ascertained, there is nothing for a jury to pass upon. In the present case, giving to the plaintiff's testimony its fullest significance, the only inculpatory circumstance is that an explosion occurred, which injured the plaintiff while he was at work upon the defendants' premises. The case therefore presents, in the most direct manner, the

question, whether proof of the occurrence of an accident raises a presumption of negligence.

The principle is quite institutional, that whenever a right of action springs from the conduct of a defendant, the plaintiff must present proof of the facts necessary to the recovery which he seeks. It is, furthermore, the general rule of law, that the mere proof of the occurrence of an accident raises no presumption of negligence. These doctrines, which, if strictly applied, would lead to a non-suit in every case in which the plaintiff's proof failed to demonstrate the specific act of negligence which he deemed the proximate cause of his injuries, have in practice an application which, while not losing sight of their normal character, leads to an intelligent adaptation in keeping with the requirements of the modern law of negligence. It may safely be asserted that no other department of jurisprudence presents so marked an illustration of the growth of a simple rule of conduct into a principle so widespread in its application to relationships which have grown and must continue to become more and more complex. A single illustration will suffice. The employment of each new mechanical force in commerce or manufacture must tend, not only to increase the already existing complexity of these relationships, but also to give rise to new and peculiar duties, which, in turn, must be met by rules of law characterized, not by novelty in principle, but by flexibility in application. That the development of the law of negligence has been, in these respects, both harmonious and consistent, evinces the soundness of the foundations upon which it rests. Keeping pace with the law, whose function it is thus to declare the nature of the duties arising from these new relationships, there has been a corresponding growth in the legal rules which guide the production of evidence and weigh the sufficiency of proof. It could not have been otherwise. The use of instrumentalities of enormous power, and of complicated structure and operation, not only raises the standard of duty proportionately with the increase of danger; it also gives rise to obligations springing from the exclusive control of these

complicated agencies, and from the almost exclusive knowledge of their structure and mode of operation. The reason is obvious. When all labor was manual, each workman knew, or could easily learn, the various processes incident to his employment. To-day a single plant will comprise a multitude of diverse appliances, the operators of one being, for the most part, totally ignorant of all the others; while not one citizen in thousands knows anything in regard to the character and construction of any of the new mechanical processes with which he is met at every turn, still less of the dangers incident to their operation. Under these changed conditions, to compel plaintiffs in every case to ascribe some specific act as negligence, would be to make a recovery for injuries dependent upon the possession of a special technical knowledge, and to grant immunity to the users of dangerous agencies in proportion to the success with which the special element of danger was concealed from the public. From these considerations, it follows that the *quantum* of proof which a plaintiff must give in order to draw from the defendant explanatory evidence, must, with certain limits, be dependent upon the circumstances of each case—a rule which finds current expression in the phrase "*res ipsa loquitur*"—a free paraphrase of which is thus given by Mr. Smith in his treatise on *Negligence* (*p.* 246): "There is a class of cases," says this author, "in which there has been no direct evidence of any particular act of negligence beyond the mere fact that something unusual has happened which caused the injury. In such cases each will depend upon its own facts, with this understanding, that where a certain course of action has been pursued by any person without injury to others, and he, upon changing that course, injures another, the thing (unexplained) speaks for itself, that such person has been negligent; or, if something unusual happens with respect to the defendant's property, or something over which he has control, which injures the plaintiff, and the natural inference on the evidence is that the unusual occurrence is owing to the defendant's act, the occurrence, being unusual, is said to speak for itself that such act was negligent."

Notwithstanding the generality of the language here used, it is evident that this phrase clearly imports that there must, in each case, be something in the facts that speaks of the negligence of the defendant. Accepting this construction—which is as favorable to the plaintiff as can be found—the question before us is, do the proofs in the present case speak of the negligent conduct of the defendants? Inasmuch as the plaintiff's proofs are silent as to the conduct of the defendants personally, or through their agents, either before or during the accident, and from the further consideration that there is no proof of any of the circumstances preceding, attending or following the explosion from which its cause or location could be ascertained, it is evident that if the defendants were required to offer testimony in their defence it was not because the proofs pointed to any unusual conduct upon their part, but because the plaintiff had presented a case in which all of the relevant facts were so exclusively within the knowledge and control of the defendants that the law imposed upon them the duty of offering explanatory, if not exculpatory, testimony. The existence of such a rule is among the unsettled matters of the law, being asserted in guarded terms in some jurisdictions and emphatically denied in others. In the present case it is not necessary to discuss either the existence of such a doctrine or its harmony with the accepted canons of proof, for the reason that its application, in any event, must depend upon whether the party invoking it has adduced all of the testimony reasonably within his power, for it is in such cases only that the rule in question is applied by those who maintain its soundness. Thus, for instance, Mr. Best, speaking of this rule, confines it to cases " where the question is of such a character as from its very nature almost all the evidence which could be adduced on the subject must lie in the possession of one of the parties." *Best Beg. & Rep. (Am. Ed.)* 74.

In any aspect of the law, therefore, it must be conceded that unless a plaintiff has presented the testimony which was

reasonably within his power he can derive no benefit from the proposed doctrine.

In the present case it is clear that the plaintiff has not brought himself within the rule thus stated. He was the only witness who testified to an occurrence of the circumstances which he admitted he knew nothing except by hearsay. At the time it occurred he had been in the employ of the defendants for about one year. After a few weeks, absence he returned to the same employment and continued therein, at the same wages and at the same work, for a period of over three years. To my mind it is inconceivable that during these three years, after the injured man returned to work, he never inquired into the particulars of the accident by which he had been hurt, or, that having inquired, he never learned a single circumstance concerning it, or the name of a single witness in respect to it. The two workmen he saw standing in the yard were known to him, and in his testimony he calls them by name. He must also have known others of his fellow-workmen. From these he must have learned something of the occurrence upon which his action is based. His own testimony shows conclusively that material facts respecting this accident were communicated to him with more or less of detail. If he had called to the witness stand his informants he could doubtless, by them, have shown the location and, perhaps, the nature of the explosion—certainly its results, and possibly its cause—whether it was upon the premises of the defendants or in respect to some matter under their control—whether it occurred, as he himself stated, while a pipe was being fixed by his fellow-workmen. In fine, facts could have been presented which, if they spoke of the defendants' negligence, would have called for a defence; or circumstances have been detailed showing that plaintiff had exhausted the sources of evidence open to him and was therefore entitled to the consideration of the court in calling upon the defendants for explanatory evidence. In the present case neither was done; the facts showed simply that the plaintiff was injured, while the circumstances pointed conclu-

sively to the possession by him of a mass of undisclosed testimony highly pertinent to the *gravamen* of his action. If this plaintiff, upon the meagre proof thus offered, is entitled to go to the jury, then, in such cases, all that any plaintiff need show, no matter what his actual knowledge of the facts may be, is, that he was injured by some unusual occurrence while at work for his employer. This is not the law. On the contrary, when the plaintiff's case shows that he has not produced material evidence clearly within his reach, the mere proof by him of the occurrence of an accident by which he was injured does not raise a presumption of negligence which the defendant can be called upon to rebut. A judgment of non-suit ordered in such a case will not be disturbed.

BEASLEY, C. J. (dissenting). In my opinion there was a *prima facie*-case made when this non-suit was ordered.

The plaintiff was the only witness testifying to the circumstances embracing the accident.

His narration was a brief one. He said he worked for the defendants in a building that was called a "tail-house," his function being to weigh the oil that came there through certain pipes. These are his words with respect to the accident: "When I went into the tail-house I had a thermometer with me, and just as I was going to put it down there was a terrible explosion, like the report of a gun, and threw me out of the tail-house, and the cap from my head, and my hair and my beard and everything was burnt away; I ran out, in my great fear, and the fire came flowing out of the building."

With regard to the cause of the occurrence, he says it was occasioned by the bursting of a pipe. On cross-examination he was asked the question, "These pipes frequently get to leaking, don't they?" and he answered, "They don't leak very often, but sometimes." He further testified, "We have always gas in the tail-house."

His further statement was that he saw some of his fellow-workmen near the point of accident, but did not know what they were doing.

This is all the evidence having any pertinence whatever.

Under this condition of facts, I think the matter ought to have gone to the jury.

The business was a dangerous one, unless carefully conducted. The defendants were bound to furnish, so far as possible, machinery and instruments appertaining to such business of approved strength and quality. So it was incumbent on them to see that they were kept in that degree of repair that would result from the highest degree of care and attention.

It is not to be lightly inferred that instruments of the kind thus specified, and which had been thus supervised, would, in the absence of all known special cause, give way and burst under the ordinary pressure to which in the course of business they would be subjected, and consequently the bursting of this pipe, under such circumstances, would reasonably lead in the direction of a conclusion that it was in an imperfect condition. It is true that such conclusion would not, of itself, render the defendants liable, for such disruption of the pipe might have proceeded from a defect altogether inscrutable upon the most careful examination. But when we add to the fact of this explosion, so improbable in itself, in the absence of neglect, the further fact that their pipes had been leaking, more or less, and that there was constantly a smell of gas in their vicinity, it seems to me that there was plain proof to charge the defendants with the want of that high degree of care which the law exacted from them in an affair touching the safety or even the lives of their employes.

I cannot agree to the proposition, necessary to legalize this non-suit, that a manufacturer can leave pipes containing a combustible so explosive if it escape as to be dangerous to human life, in a leaky condition, and be exempt from all liability to account for such seeming neglect.

In my opinion, the facts as proved, unless explained or controverted, would have legally warranted a verdict against the defendants. I am, therefore, compelled to vote reverse this judgment.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT SMITH, WHITAKER. 11.

*For reversal*—THE CHIEF JUSTICE. 1.