ANN COMBEN, ADMINISTRATRIX, &c., OF THE ESTATE OF ROBERT COMBEN, DECEASED, PLAINTIFF IN ERROR, v. THE BELLEVILLE STONE COMPANY, OF NEW JERSEY, DEFENDANT IN ERROR.

1. The duty of a master towards a servant in his employment is to exercise reasonable care and skill to provide safe machinery and appliances for carrying on the business for which he employs the servant, and in keeping such machinery and appliances in a safe condition for such use, including the duty of making inspection and tests at proper intervals whilst the work progresses, to ascertain if it remains in such safe condition. The master is also bound to exercise reasonable care to provide a safe place for his servant to perform his work, and to the exercise of reasonable care to keep and maintain the place safe, and such duty as to machinery, appliances and place continues when his servant is changed from place to place upon the work in which he is engaged for his master when the danger of such change is not obvious, and the servant is without knowledge of it, and cannot observe and acquire the knowledge in the exercise of ordinary care in the employment.

2. Where there is a fair dispute in the evidence, or two classes of conclusions can reasonably be reached from it, whether the injury to the servant was the result of the negligence of the master to exercise the

care required to provide proper machinery and appliances for the use of the servant, or a proper place in which to perform his work, or whether the injury was the result of obvious danger or risk to the servant, or the want of ordinary care on his part to observe dangers within his knowledge, or of which he ought to have known in the exercise of such care, then a case is made which should be submitted to the jury for their determination.

3. When, at the close of the case of the plaintiff, there exists upon the evidence a substantial dispute whether the injury arose from the negligence of a fellow-servant or not, a motion to nonsuit on this ground cannot prevail.

On error to the Essex County Circuit Court.

For the plaintiff in error, *Thomas J. Lintott.*

For the defendant in error, *Hayes & Lambert.*

The opinion of the court was delivered by

LIPPINCOTT, J. On March 7th, 1894, one Robert Comben, the intestate of the plaintiff in error, was employed by the defendant in error in working in its stone or rock quarry at Avondale, in the State of New Jersey, and whilst so working he was, by the operation of the machinery and appliances of the defendant in use in its quarry, thrown from a ledge of rock where he was working and killed. The plaintiff in error is his widow, and sues the defendant company for damages resulting to her as his widow, and to his two brothers, as his next of kin. At the trial below, at the close of the case of the plaintiff, the trial judge ordered a judgment of nonsuit, to a review of which this writ of error is directed.

At the trial it appeared that the intestate was a quarryman in the employment of the defendant, engaged in drilling holes in the rock for the purposes of blasting. At the time of the accident he was so engaged on a pinnacle or ledge of rock to which he had been removed from another part of the work. In about twenty minutes after he had been set at work at this place, the drag-rope connected with the machinery for hoisting the rock and debris out of the quarry sagged and swept

across the ledge of rock and carried the deceased into the quarry below, and by reason of the fall he was killed. It was the sagging of this rope which caused the accident and his death. Had the rope remained taut it would have been some eight or ten feet above his head, and he would probably have escaped injury. The machinery was operated by an engine and derrick, and the rock was hoisted up in carriages to which the rope was attached, and by means of a stationary cable carried to the dumping-ground. The drag-rope which on this occasion sagged ran from a drum in the engine-house up to an anchorage of the cable, and then passed through a pulley. This drag-rope was regulated or controlled by the drum, which drum was operated by engine power, and its movements controlled by a friction brake, by which the rope could be released wholly or in part, and the friction increased or decreased by the engineer in charge of the machinery. There is some evidence that the proper manipulation of the friction brake would prevent to some extent the sagging of the rope. It is in evidence also, and, as it appears, undisputed, that the sagging and swinging of the rope could have been prevented by the attachment of protectors or hangers from some portion of the machinery to the rope, and that thus it would have been rendered safe. There is also evidence tending to show that the rope was too long to be safe if operated without these protectors or hangers. The rope was from two hundred to two hundred and fifty feet in length, and without any protection from sagging save from the friction brake. The evidence shows that there was nothing connected with the rope to hold it from swinging or sagging at any point between the engine and the point of anchorage, where it passed through the pulley. There is evidence to show that when the rope was taut it would not only be from eight to ten feet above the head of the intestate, but also it would not approach nearer to him than from five to eight feet, but when it was slackened it was liable to sweep across the ledge or face of the rock where the intestate was at work. It is in evidence that in a quarry worked close by this one by similar

machinery, this drag-rope was held by hangers. It is also in evidence that the derrick by which the hoisting was done had stood on this ledge of rock for a long time previously, and that it had been removed about a week before the accident in order to allow the workmen to excavate the ledge. There is evidence tending to show that the foreman of the defendant had been warned, just before or about the time he set the intestate to work there, that the spot was a dangerous one to work in because of the liability to danger by reason of the sagging of this rope, and that in the face of this warning the intestate was placed there to work without this alleged defect being remedied. There is a question under the evidence whether the intestate knew of this danger or whether it could have been obvious to him. Previous to this time he had been at work upon another portion of the quarry where there existed no such danger as this, and it is questionable under the evidence whether before he was set at work at the place of the accident, at the time or afterwards and before the accident, he could have observed or could have known at all of the danger to be encountered there. There is evidence that another workman had warned the foreman of the danger and refused to do the work, which was to drill holes in the rock of the ledge for blasting, and that the foreman said there was no danger, and that the rope would not come near them. The foreman then called the intestate and set him to work at this place, the doing of which in holding the drill or striking the same rendered it exceedingly doubtful whether the deceased could observe anything whatever but the drill he was using or striking.

The facts in connection with the conduct of the foreman are only referred to to show that the place at which the intestate had just been set at work was a very dangerous one. This was so not by reason of any of the tools with which he was working and which were within his control or in the use of which he had any choice, but because of the defective and unsafe machinery and appliances in use there, of the danger of which he had no notice, knowledge or warning. Whilst

he had been working in this quarry for some time, it was in another part thereof and at some distance away from this point, and there is no evidence, as I understand it, which shows that he had any knowledge, when he was set at work at this point, of the defect in the machinery or rope, or ever had the opportunity to discover such defects. Whether the danger was obvious to him does not appear from the evidence on the part of the plaintiff in this case. The danger did not arise from any direction of the foreman in the use of any tools or appliances with which the intestate was doing his work, but from the condition of the rope used in the general operation of the quarry.

It is not possible to cite the evidence in detail; there is some confusion in it and some contrariety about it, but the facts are generally as stated. Some exceptions were taken by the plaintiff in error upon the rulings of the trial judge in rejecting evidence, but they have not been considered, for the facts above stated appear from the evidence to which no objection was made or exception taken.

The declaration claims liability upon the averment that the defendant did not exercise reasonable care to furnish suitable and safe machinery and appliances in respect to said work, and that from the want of such reasonable care this rope was left and remained unguarded and unprotected and loosely swinging and vibrating in a manner dangerous to the safety of the intestate and rendering the place unsafe for the deceased, and thus the accident and his death occurred; and that whilst the intestate was without any negligence on his part, yet the defendant did not take or use due or reasonable precautions to have or keep the place in which he was set at work reasonably safe or free from unnecessary danger or risk to him.

It can hardly be controverted that upon the facts and circumstances of this case, placing upon them the most favorable interpretation in behalf of the defendant, that a debatable question arose whether the accident did not happen because of the want of protectors and hangers which the exercise of reasonable care would have supplied and maintained. The

rule of law in this state, which cannot now be disturbed, is that the master's duty to his servant requires of the former the exercise of reasonable care and skill in furnishing safe machinery for carrying on the business for which he employs the servant, and in keeping such machinery and appliances in repair, including the duty of making inspections and tests at proper intervals, and, besides, the master is responsible for the negligence of any agent whom he may select to perform this duty for him, if the agent fails to exercise reasonable care and skill in its performance. *Steamship Company* v. *Ingebregsten,* 28 *Vroom* 400, 402.

Applying this principle to the evidence, the court could not determine that the evidence was clear that the master's duty in this respect had been performed and that no other reasonable and legitimate conclusion could be reached. Whilst the burden, in the proof, of negligence in this respect is upon the plaintiff, yet if the question, as presented by the evidence, is one about which a difference of opinion might reasonably be entertained, the question must be submitted to the jury.

Whether the defendant was guilty of negligence in not exercising reasonable care in supplying reasonably safe machinery and appliances, and in keeping them in a safe condition, was a question for the jury, depending upon the facts of the case. *Van Steenburg* v. *Thornton,* 29 *Vroom* 160; *Electric Company* v. *Kelly,* 28 *Id.* 100.

This was the character of care required of the defendant company, and it could not absolve itself from responsibility by entrusting that care to an agent or a fellow-servant of the defendant, who failed in its exercise. *Ibid.* In looking at the proof in this case on the part of the plaintiff, there appears, to my mind, affirmative proof of the negligence of the defendant in this respect. The circumstances are such, as produced on the part of the plaintiff, to fairly lead to this conclusion.

The further ground of nonsuit contended for is that the intestate took upon himself all the risks of dangers incident to the employment which were obvious, or could have been

perceived by him in the exercise of his senses and the use of ordinary care and circumspection, and that these were the only risks to which he was subjected.

The degree of care required by law of the defendant, as applied to the facts of the case, in this respect leaves the intestate only responsible for the risks obvious to him, or which he could have discovered by the exercise of ordinary care. In view of the principle that the intestate had the right to assume that his employer had exercised reasonable care in furnishing proper appliances and in keeping them safe, the facts are such that whether the dangers were obvious to him or whether he could have perceived the dangers by ordinary observation, became questions for the jury and not for the court to solve. The facts, as presented in the evidence, were the subjects of two classes of conclusions or inferences, both, perhaps, to an extent, reasonable, and it was within the province of the jury to determine which to adopt.

Again, it is contended that the accident occurred through the negligence of the engineer in the careless manipulation of the brake. The evidence does not show in this case what the action of the engineer was which can be characterized as negligent. There is some evidence directed to the proof that the accident might have been prevented if the engineer had properly applied the brake and caused a friction, which would have prevented the rope from running off the drum so rapidly and thus obviated the sagging. But what the conduct of the engineer on this occasion was does not appear in the evidence for the plaintiff. Whether the engineer failed to slack up on this rope, so that the carriage in which the stone was hoisted could have been drawn back without the sagging of the rope, does not appear. An argument is made that the accident must have happened in this way. But there are clear indications in the evidence that this rope, of the length of two hundred and fifty feet, would be liable to swing from side to side or sag unless it had protectors or hangers attached thereto. Now, conceding that the engineer was a fellow-servant of the deceased, the question arises upon the evidence whether the

accident was due to his negligence or whether it was due to the defects in the rope itself and the machinery which the engineer was operating. There is, as has been said, evidence tending to show that however careful the engineer might have been in operating his engine and the drum, yet it might not have prevented the sagging of the rope. These are questions which manifestly should have been submitted to the jury. The negligence of a co-servant which would excuse the liability of the master, should clearly appear in the evidence produced on the part of the plaintiff, in order to sustain a motion to nonsuit. The most which could be said in favor of the defendant in error in this matter would be that there existed a substantial dispute whether the accident was caused by the negligence of the engineer in charge of the machinery, and the state of the case required, upon this question, that it should have been submitted to the jury.

Upon this subject it is only necessary to state that, by all the authorities in this state, it is held that when the evidence on any given subject in this class of cases is open to fair debate, and leaves the mind in a state of some doubt upon the question, the trial judge is not justified in taking the question from the jury. Wherever two inferences can be drawn from the evidence upon questions of negligence, a case is presented which calls for the opinion of a jury. *Bahr v. Lombard, Ayres & Co.*, 24 *Vroom* 233; *Delaware, Lackawanna and Western Railroad Co. v. Shelton*, 26 *Id.* 342.

The judgment of nonsuit must be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, DAYTON, HENDRICKSON, NIXON. 15.