BENNETT COLE, DEFENDANT IN ERROR, v. THE WARREN MANUFACTURING COMPANY, PLAINTIFF IN ERROR.

Argued June 28 and 29, 1899—Decided November 20, 1899.

1. Plaintiff was millwright in defendant's paper-mill.    A line of overhead shafting in the mill was furnished with a permanent scaffold supported on posts except at the ends, where it rested in hangers suspended from above.    Preparatory to partial reconstruction of the mill these hangers were removed, to the knowledge of the plaintiff, and the ends of the

scaffold were propped from below. The reconstruction was by a mill architect and builder specially employed, and in it the plaintiff had no part. After the reconstruction the scaffold was put in service without any hanger at one end, which end bore against the side of a stone partition wall. More than a month after the reconstruction the plaintiff was called on to make repairs to the shafting. In the interval he had not noticed the scaffold but knew that it had been in constant use by the workmen. In company with defendant's machinist he went on the scaffold without looking to see how it was supported. The men were followed by the plaintiff's son, a boy of seven years, who went of his own will, but without hindrance from his father. While the three were on the last planks of the scaffold the machinist climbed from its extreme end to an opening in the wall in order to look at a bearing of the shaft on the other side, and as he came down again upon the planks they fell, carrying down the three persons, with resultant injury to the plaintiff. There seems to have been at that time no prop underneath that end of the scaffold.

2. In an action to recover for the plaintiff's injuries on an alleged breach of the master's duty to use reasonable care for the security of the scaffold, the trial judge refused to nonsuit the plaintiff or to direct a verdict in favor of the defendant, and verdict and judgment went for the plaintiff. On writ of error, based only on exceptions to such refusal—
*Held*—

1. That the failure to replace the hanger might constitute negligence chargeable to the master.

2. That the employment of a competent mill architect and builder was not a full discharge of the master's duty; that duty extended to proper inspection and tests after the scaffold was again put in service.

3. That the defendant's duty to the plaintiff could not be delegated to fellow-servants to the exculpation of the master.

4. That the plaintiff's employment as millwright did not by that mere designation involve a duty on his part to inspect the scaffold.

5. That the plaintiff had a right to assume that the scaffold was safe and, therefore, the absence of the hanger, formerly used, did not make it obviously dangerous.

6. That negligence in the plaintiff was not a necessary inference from the presence of his infant son upon the scaffold.

7. That recovery for the master's negligence was not barred even, although negligence of the plaintiff's fellow-servant, the machinist, may have contributed to the injury.

8. That the trial judge was right in his ruling and that the judgment should be affirmed.

---

On error to the Supreme Court upon a judgment on verdict in a cause tried at the Warren Circuit.

For the plaintiff in error, *George H. Large* and *Henry S. Harris.*

For the defendant in error, *Sylvester C. Smith.*

The opinion of the court was delivered by

COLLINS, J.    The plaintiff recovered for personal injuries sustained while in service as millwright in a paper-mill of the defendant. The breach of duty alleged was a failure to use reasonable care for the security of a scaffold that was one of the appliances furnished by the master for the work required of the servant. It is assigned for error that no case was made for the jury, exceptions having been sealed upon the refusal of the trial judge to nonsuit the plaintiff or to direct a verdict in favor of the defendant. The plaintiff and James Corcoran, a fellow-servant, were restoring to alignment certain overhead shafting that had buckled, and in that work were necessarily standing on a permanent scaffold two feet wide and about twelve feet high, built to afford access to the line. The scaffold was composed of twelve-inch planks laid longitudinally, supported by posts carrying brackets on which the ends of the planks came together. At the east end of this scaffold the planks, which there, were about six feet long, extended from the last post and bracket to, and bore against the side of, a stone partition wall. They had formerly had the additional support of a wooden hanger that, at a distance of about two feet from the wall, was suspended from the floor-structure of the story above, but because of the demolition of that floor preparatory to a partial reconstruction of the mill this hanger had been removed. The plaintiff took part in the work of demolition but not in that of reconstruction, which was entrusted to a mill architect and builder and a force of men from outside of the mill. This hanger was not replaced when the scaffold was again put in service. Of course the failure to replace it might constitute negligence in the master. It was urged, but rightly without avail, that those engaged in the work of reconstruc-

tion were fellow-servants in a common employment with the plaintiff, and that the risk of their negligence the law placed upon him. The element of common employment seems lacking, but if it were not the risk was the master's, not the servant's, for the duty was the master's and could not be delegated so as to work his exculpation. *Steamship Co.* v. *Ingebregsten,* 28 *Vroom* 400 ; *Curley* v. *Hoff,* 33 *Id.* 758.

It is suggested in this court that as the defendant employed, for the reconstruction it undertook, an expert mill architect and builder, whose competency was not questioned, its duty of using reasonable care for the safety of its servants was fully discharged, and that this should have been declared judicially and not have been left, as was the case, for the determination of the jury. · This point was not taken at the trial, but, waiving that infirmity, the suggestion has no merit, for the defendant's duty did not end with the reconstruction. It is the law that a master's duty towards his servants of exercising reasonable care for the safety of appliances he furnishes extends to keeping such appliances in repair and includes the duty of making inspections and tests at proper intervals. *Steamship Co.* v. *Ingebregsten, ubi supra.* Had this duty been performed the defect in the scaffold would surely have been discovered.

The main reliance of defendant was upon the claim that the plaintiff's employment included the inspection of this very scaffold, and that therefore he at least had no right of action against his master for a breach of the master's duty to inspect it. The argument is sound but the premise was disputed in the testimony. The learned trial judge put the stress of the case just there in his instructions to the jury, and the verdict turned upon the resolution of that dispute against defendant. All that can be contended for upon this writ of error is that a duty to inspect the scaffold inhered in the designation by which the plaintiff was employed. In his declaration he alleges, and in the testimony both parties assert, that he was employed as a millwright. Thus court

and jury were driven to inquire the meaning of that term as used in connection with the plaintiff's service. The most comprehensive definition I have found is that given in the "Century Dictionary," viz.: "Millwright—An engineer who designs, constructs and erects mills, their motors, machinery and appurtenances, particularly flouring and grist-mills." The plaintiff was presumably master of the calling, but only in a very narrow sense could he exercise it in the service of defendant. One who makes the current repairs of a mill in operation is a millwright only as a cobbler is a shoemaker. The name does not define the duties. The plaintiff, of course, as of the very essence of his employment, would repair the shafting of the mill when it broke down or was thrown out of true alignment. In his testimony he admitted that the scaffold that broke was an appurtenance of the line of shafting it accommodated, and he said that had his attention been called to any defect in the scaffold he would have put it in repair. Except for this admission it would have seemed to me that such repair was strictly carpentry. But however that may be, the point of our inquiry is what duty of *inspection* rested on the plaintiff. Nothing on that subject was specified in the contract of employment, and I can find no such duty inherent in the mere designation. Experts called to testify as to the implied duty of inspection in such a millwright as the plaintiff differed widely in opinion. The question was not one of judicial determination, but was for the jury, to whom under all the testimony it was properly left. As to what, in practice, were the duties that the plaintiff did perform there was dispute. The plaintiff testified that he, together with James Corcoran, who was employed as blacksmith and machinist, and Charles Perry, who was employed as carpenter, worked in a shop on defendant's premises; that he and Corcoran were at the call of any employe who had discovered need of repair in shafting, machinery or appurtenances, and that they were accustomed to go through the mill, sometimes together and sometimes apart, to inquire of the men in charge of the different rooms if there was any work to be done in their respective

lines. The plaintiff gave special attention to shafting and Corcoran to machinery. Generally, Corcoran and the plaintiff worked together, and on the day of the accident had gone on the call, to the plaintiff, of the man in charge of the cutters run by the shaft they were repairing. By this and other testimony it would appear that in actual practice the plaintiff's duty was inquiry, not inspection, and while the general manager of defendant and the superintendent of this mill testified to a different understanding on their part and to a practice of inspection by the plaintiff that was their reliance, that controversy, of course, could not be settled by the judge. If the duty of inspection was delegated to the heads of the different rooms, such delegation did not relieve the master from responsibility and the fact that they were fellow-servants with the plaintiff is immaterial.

The other grounds presented for the defendant's unsuccessful motions at the trial require a statement of the circumstances of the injury. The plaintiff and Corcoran went on the scaffold at its west end and worked along the shafting until they came to the east end and stood on the last planks. The plaintiff's son, a lad of seven years, had followed them there. Corcoran was at the extreme eastern end of the scaffold; the plaintiff stood a little west of him, working on the shaft, while still further west stood the boy, looking on. Corcoran climbed up into an opening in the partition wall, in order to look at a bearing of the shaft that was on the other side. The bottom of the opening was about three feet above the elevation of the scaffold and a little to one side. After looking at the bearing, Corcoran lowered himself down upon the ends of the last planks of the scaffold. As he did so they gave way under him and fell, carrying down the three persons, and in the fall the plaintiff was seriously injured. Assuming Corcoran's act to have been negligent, it was argued, for the defendant, that his fellow-servant was remediless for its result; but the argument was not well founded, for such negligence, when combined with that of the master, is without legal effect. Only the plaintiff's own negligence

contributing to his injury could defeat recovery. *Paulmier* v. *Erie Railway Co.*, 5 *Vroom* 151 ; approved in this court, *New York, Lake Erie and Western Railroad Co.* v. *Steinbrenner*, 18 *Id.* 161.

The plaintiff knew that the hanger referred to had been removed, and the defendant contended that, in standing upon the last planks of the scaffold while they were unsupported by the hanger in which they had formerly rested, he contributed to his injury by indisputable negligence. The plaintiff testified that he did not look to see whether or not the hanger was in place. He did not think about it at all and did not notice its absence. It could not have been held, as matter of law, that the plaintiff was bound to remember that the hanger had been removed and to look for it before stepping on the planks that it had formerly held. The plaintiff testified that the room was but dimly lighted, but even if it could have been assumed that a careful man could not have failed to notice the absence of the hanger, still, it was not a necessary inference from such absence that the scaffold was unsafe. The work of reconstruction had been finished more than a month, and while the plaintiff had not since then had occasion to use the scaffold, he knew that it had been constantly in its accustomed use by the workmen who oiled the shaft. He might well have reasoned that in the reconstruction the hanger had been discarded for support from below. Corcoran did notice its absence but assumed such support. In fact there was testimony that props had been placed under the ends of the planks and spiked to the wall and that those props would bear half a ton's weight. Probably they were intended only for temporary use while the shafting was being rehung, and they must, at some time, have been removed for they were not found in the wreck, and the inference is that, at the time of the accident, the planks had no support except from such projections as would be afforded by a rough wall, but I think that under all the circumstances an assumption that in some way the scaffold had proper support superseding the hanger would not have been necessarily negligent. A

servant has the right to assume that the appliances furnished by the master are reasonably safe for use. *Wood M. & S.,* §§ 346, 366 ; *Comben* v. *Belleville Stone Co.,* 30 *Vroom* 226, 232.

Contributory negligence in the plaintiff was also predicated in argument upon the presence on the scaffold of the plaintiff's son, but that contention is as untenable as the one last considered. The boy followed the workmen of his own will, not by his father's invitation. Negligence consisting only in refraining from parental coercion is too tenuous to be held contributory to an injury resulting from another's fault. It is by no means certain that the weight of the boy helped to dislodge the planks. He must have stood very close to the ends supported by the post and bracket and his weight, therefore, must have been almost if not quite inappreciable in causing the disaster. But in any view the test should not be the weight-bearing capacity of the scaffold as negligently left but as it normally should have subsisted. No witness testified that, properly constructed, such a scaffold would bear the weight of two men but not that of two men and a boy. If negligence is a possible inference from the boy's presence on the scaffold it was for the jury, not the court, to draw that inference.

There was no error in refusing to take the case from the jury and the judgment will be affirmed.

*For affirmance*—DEPUE, VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, COLLINS, BOGERT, NIXON, HENDRICKSON, VREDENBURGH. 10.

*For reversal*—None.