MARTHA WHITTINGHAM ET AL.; PLAINTIFFS IN ERROR,
  v. RICHARD HOPKINS ET AL., DEFENDANTS IN
  ERROR.

Argued November 25, 1903—Decided February 29, 1904.

1. The statute regulating the laying out of public roads by surveyors of the highways contemplates the joint action of the appointees, or a majority of them, acting as a body, in dating, signing and delivering their return ; and where it appeared that two of the four purporting to have signed the return did so upon separate dates and occasions, when alone and apart from their associates, it was *held* that the return was invalid.
2. Where the terminal point of a public road as laid out by the surveyors deviates ·from the same point named in the order appointing them, as well as in the advertisements set up, to an extent or distance exceeding the advertised width of the road, the variance is material and vitiates the return.

3. Uncompleted buildings, not furnished with either doors or win-
dows and not occupied, nor reasonably capable of occupancy for
dwelling purposes, are not dwelling-houses within the meaning
of the one hundred and sixty-seventh paragraph (*Gen. Stat., p.*
2838) of our Road act.

4. But even if the buildings in question in this case had constituted
dwelling-houses within the scope of the act, yet if the surveyors,
for the sake of avoiding them, made the variance with that
object *alone* in view, without also "having regard to the best
ground for the road and the shortest distance in such a manner
as to do the least injury to private property," their action would
have been erroneous. The fact that the prosecutors, by erecting
the buildings prior to the application, may have thus created the
conditions upon which the surveyors acted, cannot legalize such
variance. The case of *State* v. *Woodward*, 4 *Halst.* 17, dis-
tinguished.

On error to the Supreme Court. For opinion of Supreme
Court, see 40 *Vroom* 139.

For the plaintiffs in error, *Chauncey G. Parker.*

For the defendants in error, *Howe & Davis.*

The opinion of the court was delivered by

VREDENBURGH, J. Among the reasons assigned by the
plaintiffs in error for the reversal of the judgment of the
Supreme Court, which affirmed certain proceedings had in
the Essex Common Pleas in the laying out of a public road
by surveyors of the highway, there are two which we think
should be held sufficient. The first which will be considered
relates to the formal making, signing and delivery of the
return. It purports, on its face, to have been made, dated
and signed by four of the six appointed surveyors on the
25th day of July, A. D. 1902, but it is shown by the date of
its filing, on July 8th, 1902, as well as by the admission of
counsel, that it must have been made and signed on or before
the latter date and that its date is an error. From the un-
disputed evidence (correcting mistakes of dates of meetings
as certified in the return) it sufficiently appears that all of
the six surveyors, who were originally appointed by the court,

first met and viewed the road on May 23d, 1902, and thence, after several adjournments, met for the last time on June 25th, 1902. Two of the four signing surveyors did not sign nor see the return until two or three weeks after the final meeting of June 25th, 1902, and then upon separate occasions, at their respective houses, and when apart from each other as well as from the other appointees. Neither of the two latter read the return, nor had its contents read or explained to them before they signed it, both admitting in their testimony that they only "looked over the heading of it." On what day the two former signed does not appear. The question presented by the above statement of facts is whether they constitute a sufficient execution of the official return of this appointed body under the requirements of our statute. The laying out of a public road by surveyors of the highways, acting under judicial authority, embracing the consequent taking of private property for public use, and the making to the owners thereof compensation in damages, is an extremely important exercise of governmental power, and it is held by our courts that the directions of the enabling statutes must be strictly pursued. Section 5 (*Gen. Stat.,* p. 2804), in its provisions bearing immediately upon the matter in hand, commands that the surveyors, when met pursuant to the order of appointment, upon proof being made that the advertisement of their meeting has been set up, shall view the premises and may, if they shall think it necessary, lay out the said public road and make return thereof with a map, which return the said surveyors, or a majority of them, "shall date, sign and deliver" to the applicant, who shall deliver it to the clerk of the Court of Common Pleas, &c. This statute clearly contemplates joint action by the appointed surveyors, or a majority of them, in the performance of the duty of dating, signing and delivering the return. Its express direction is that, when "met", they, as one body, "shall date, sign and deliver" their return to the applicant. That the dating, signing and delivering of the return is required to be but one joint act is also apparent from the

terms of the next section (6) which declares that the filing of the return must be done (under the severe penalty of the return being a void act) "within fifteen days after the date thereof." Plainly, but a single date is within the statutory purpose, because if each surveyor may, on other dates when so signing, date the return according to the fact, the proper day limited for the filing of the paper would, legally speaking, be unascertainable. That the validity of the return depends upon the joint act of the surveyors, upon one and the same occasion, is in accord, inferentially at least, with the decisions of the following cases: *State* v. *Schenck,* 4 *Halst.* 135; *In re Matter of Public Road,* 1 *South.* 290; *Griscom* v. *Gilmore,* 1 *Harr.* 105; *State* v. *Scott,* 4 *Halst.* 17; *Schumm* v. *Seymour,* 9 *C. E. Gr.* 143; *West Jersey Traction Co.* v. *Camden Horse Railroad Co.,* 8 *Dick. Ch. Rep.* 163. See, also, 19 *Am. & Eng. Encycl. L.* 467.

It is not difficult to find satisfactory reasons of public policy for this construction of the statute. One object of the law, manifestly, was to obtain the benefit of the combined judgment of these public officers while assembled together as a body, having opportunity to interchange opinions with each other in their final action. Signing upon separate occasions by individual officers, in the absence of their associates and upon the pressure, perhaps, of interested parties, might be fraught with great danger to both public and private interests. Indeed, in the present proceedings a large part of the depositions taken relate to various temptations of profits and entertainments proved to have been held out by interested parties to two of the signing surveyors.

The other reason referred to reaches to the validity of the return in respect to the variance between the ending point of the road, as applied for and ordered to be laid, and the same point as fixed in the return. The ending point of the road, as proposed, reads in the order of appointment, in the following precise terms, viz.: "Thence easterly, on a course deflecting to the left, having a radius of one hundred and ninety-two and seventy-four hundredths feet, and to which

the last-mentioned line is tangent, one hundred and ninety-four and ten hundredths feet, to an iron spike set at or near the centre line of Laurel street, said last-mentioned curve being subtended by a chord bearing north seventy-eight degrees thirty-three minutes east and having a length of one hundred and eighty-six feet. The last-mentioned spike being distant about five hundred feet northwesterly from the northwesterly line of Wyoming avenue, and being distant southerly fifty-six and sixty-five hundredths feet from the westerly corner of a dwelling-house named "Princessgath," and distant southwesterly forty-eight and ten hundredths feet from the southerly corner of the terrace wall of said house. The said road to be sixty feet wide, the above courses and distances being the centre line of same, and the length from Brookside avenue to Laurel street being thirty-eight hundred and twenty-six and forty-eight hundredths feet."

In the return this ending point is thus designated, viz.: "Thence easterly, on a course deflecting to the left with a radius of two hundred and eighty feet, three hundred and twenty-two and forty-five hundredths feet, to an iron spike set in or near the centre line of Laurel street, and ending there; the last-mentioned curve being subtended by a chord bearing north, eighty-one degrees twenty-two minutes west, and having a length of three hundred and four and ninety-three hundredths feet, * * * which said lines are the middle of the road and have been marked by us at proper distances on the lines of the same; the said road to be sixty feet wide."

The effect of this deviation at the ending place to which this road is to be laid out is reflected in the return, in general language, by the surveyors' certificate to the effect that it makes "the eastern terminus of the said road about ninety feet southeasterly from the terminus, as stated in said petition and order." This variance is equal to one and one-half times the width of the road as ordered to be laid out.

The statute (*Gen. Stat., p.* 2828, § 119) declares that the surveyors shall meet at such place and time as the court

shall direct, and advertisements shall be set up setting forth the time and place of meeting, agreeably to the directions of the court, and "designating the points or places from and to which the said road is proposed to be laid out." How precisely these advertised places "from and to which" the road is to be laid out is required to be adhered to by the surveyors in the making of their returns of the actual laying of the road upon the ground, has been the subject of many judicial expressions in the decided cases reported. No decision of our courts upon the construction of this statute has yet held that a variation equal to one and one-half times the width of the laid-out road is immaterial. On the contrary, the weight, or at least the decided trend of authority, is that a variance in either the beginning or ending points of the laid-out road from the same points named in the order appointing the surveyors and advertisements set up, exceeding in distance the width of the road, is material. *State* v. *Van Buskirk,* 1 *Zab.* 86; *State* v. *French,* 4 *Id.* 736; *Evers* v. *Vreeland,* 21 *Vroom* 386; *State* v. *Burnet,* 2 *Gr.* 385.

By force of this statute, lands and improvements are authorized to be condemned for public use, and no notice of such taking to owners liable to be affected is given, except the advertisements set up. From these alone each owner must, at his peril, determine to what precise extent his holdings are liable to be appropriated. It is therefore of great moment that the surveyors should not depart in the laying out of the road from the advertised terminals. Beyond the width of the road, no change by them in the location of the advertised terminal point has yet been sanctioned by the courts, and we think that any variance in the return from such point in excess of this width should be held fatal to its validity.

The alleged act of the prosecutors in beginning the erection of three "buildings," so called in the return, at the eastern end of the road, within the lines of the same, subsequently to its staking out by the surveyors, is certified by them in their return to have been done "for the apparent

purpose of preventing the laying thereof," and to have made it "necessary" for them to make this change of about ninety feet at the eastern terminus. In the opinion filed below, after referring to the building of these three houses by the prosecutors, it is said that "the prosecutors, in point of fact, created the condition that led to the variation of which they now complain." It is not found as a fact by the Supreme Court that those buildings were dwelling-houses at the time of the laying out of the road. They are not so described in the return, and the uncontroverted testimony of the surveyors shows that they were then unfinished. They had no doors nor windows in them, and never had been occupied as dwelling-houses, and were not reasonably capable of such occupancy. The one hundred and sixty-seventh paragraph of our Road act (*Gen. Stat., p.* 2838; section 1 of the act of 1893) provides "that nothing in the act contained shall be construed to extend to   *   *   *   pulling down or removing any dwelling-house, market-house or other public building heretofore erected, and which may encroach on any highway." Under this prohibition, which constituted the thirty-fourth, and subsequently the seventy-ninth, sections of the old laws, it is held that its effect is restrictive of the powers of the surveyors in laying out roads, as well as of the power of overseers in removing encroachments, and that any laying out and return within the prohibition is *ultra vires.* This court, in *State* v. *Troth, 7 Vroom* 422, said that this section of the Road law clearly makes it unlawful to lay out a road through a dwelling-house, as the road could not be opened nor used; but the prohibition is confined, we think, to erections reasonably capable of occupancy as dwelling-houses, erected before the laying out of the road. If after the road is laid out they become dwelling-houses, they are then encroachments upon the road. *State* v. *Waldron, 2 Harr.* 368. Before the actual laying out of a street, and while the proceedings to lay out are *in fieri,* the landowner has the right to the lawful use of his property. *State* v. *Carragan, 7 Vroom* 52. Nor do we think that the prosecutors are estopped by

·reason of their conduct in making these erections pending ·these proceedings from bringing *certiorari* to question their legality. They are not shown to have misled, by such acts, the surveyors in any way in the making of their return. If the surveyors illegally assumed that a necessity existed, by reason of the existence of these unfinished buildings, to deviate from the order of their appointment, it was their own mistake of law, for the consequences of which the prosecutors cannot be held responsible. In the case cited· and relied upon in the opinion below (*State* v. *Woodward,* 4 *Halst.* 17), the principle of estoppel was applied because it appeared that the prosecutor, by both word and conduct, deceived the surveyors, and induced them to lay the road out on a certain route different from that authorized by their appointment. Chief Justice Green there said: "By his [the prosecutor's] advice and importunity, the departure from the order of the court was effected." There is no pretence that the prosecutors in the case *sub judice,* either by word or act, misled these officers, or any of them. In building upon their own property they were acting within their legal rights. But even if these buildings had constituted dwelling-houses under the meaning of the law, the surveyors would not have been justified in making the variance in question. Their duty then was to obey the prohibition of the statute, as construed by our courts, and refuse to lay out the road. They were not responsible for the result. They had no right to attempt to punish any owner of land within the route of the road by the method adopted by them in their return. The only considerations, on the contrary, by which they should have been governed, under the law creating them as a body, were to adjudge whether or not the road was necessary, and, if so, to lay it out as it appeared to them most for the public and private convenience, "having regard to the best ground for the road and the shortest distance in such a manner as to do the least injury to private property." It is apparent, I think, that these officers must have overlooked these statutory directions in laying out the

road at its eastern end upon so great a curve of route, and at so long a distance from the place to which it was ordered and advertised to be terminated.

For these stated reasons the judgment of the Supreme Court should be reversed and the proceedings before the Essex Common Pleas set aside.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, DIXON, FORT, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY.   10.