818    COURT OF ERRORS AND APPEALS.

Sparks v. River and Harbor Impt. Co.    74 N. J. L.

EVERETT S. SPARKS, DEFENDANT IN ERROR, v. THE RIVER AND HARBOR IMPROVEMENT COMPANY, PLAINTIFF IN ERROR.

Submitted March 25, 1907—Decided June 17, 1907.

1. A master's duty to his servant requires of the former the exercise of reasonable care and skill in furnishing suitable machinery and appliances for carrying on the business in which he employs the servant.

2. That duty will be discharged by providing machinery and appliances which are in common and ordinary use, and which are reasonably safe and fit for the purposes for which they are to be applied.

3. While a servant assumes the risk of injury from obvious defects or dangers, he does not assume the risk of injury from defects and dangers which are not obvious, and of which he had no knowledge, and could not observe and know of by the exercise of ordinary care.

4. Where there is a fair dispute in the evidence, or two classes of conclusions can reasonably be reached from it, whether the injury to the servant was the result of the failure of the master to exercise the care required to provide proper machinery and appliances for the use of the servant, or whether the injury was the result of obvious danger or risk to the servant, or the want of ordinary care on his part to observe dangers within his knowledge, or of which he ought to have known in the exercise of such care, then a case is made which should be submitted to the jury for their determination.

On error to the Salem County Circuit Court.

For the plaintiff in error, *William T. Read* and *Thomas E. French*.

For the defendant in error, *John W. Wescott*.

The opinion of the court was delivered by

TRENCHARD, J.   This writ of error brings under review a judgment of the Salem Circuit Court in favor of the defendant in error, the plaintiff below.

The action was one of tort for negligence.

Upon the trial there was evidence tending to prove the following facts: Everett S. Sparks, the plaintiff below, was employed by the River and Harbor Improvement Company, the defendant below, as a fireman and oiler, and while at work about a double-cylinder engine upon a mudscow belonging to the defendant the engine became "stuck on centre." The captain of the scow told the plaintiff to pry it off. The captain shut off the steam, and plaintiff took a crowbar and applied it to the cogwheels in the same manner as he had seen the captain and others do. While he was doing this the steam, notwithstanding the fact that it had been shut off, escaped into the cylinder and caused the engine to start. The crowbar hit the plaintiff in the mouth, knocked him down and rendered him unconscious. His arm caught in the cogwheels and he was seriously injured.

At the close of the plaintiff's testimony a motion was made to nonsuit the plaintiff upon two grounds—*first,* that there was no negligence shown on the part of the defendant, and *second,* that the danger was obvious to the plaintiff. At the end of the case a motion was made that a verdict be directed in favor of the defendant for the same reasons as were urged on the motion to nonsuit.

Both of these motions were denied by the trial judge, and exceptions prayed and allowed, and the case was submitted to the jury. The jury found a verdict for the plaintiff below.

The questions raised by the assignments of error can all be considered under the assignments which challenge the correctness of the refusal to nonsuit and to direct a verdict.

The first question, therefore, is this: Was the defendant company negligent?

If negligent at all, the company was negligent in failing to take reasonable care to furnish plaintiff safe appliances in and about his work.

The trial judge excluded from the consideration of the jury the theory of negligence because the engine was an old one, and that it frequently became centred, on the ground that these facts were known to the plaintiff, and he assumed whatever risk came from them. He instructed the jury that the

only intelligence upon which a verdict in favor of the plaintiff could be based grew out of the character of the valve which was furnished to control the supply of steam to the steam chest and cylinder.

It is the accepted law of this state that a master's duty to his servant requires of the former the exercise of reasonable care and skill in furnishing suitable machinery and appliances for carrying on the business in which he employs his servant. *Comben* v. *Belleville Stone Co.*, 30 *Vroom* 226; *Steamship Company* v. *Ingebregslen,* 28 *Id.* 400.

Applying this principle to the case in hand, it is manifest that it was the duty of the defendant to use reasonable care to provide a safe valve.

This duty of the master would have been discharged by providing a valve which was in common and ordinary use, and which was reasonably safe and fit for the purpose to which it was applied. *Tomkins* v. *Machine Company,* 41 *Vroom* 330.

But there was evidence tending to show that the valve in question was not one in common or ordinary use, and not reasonably safe for the purpose used. It was what was known as a Butterfly valve. The expert called by the defendant said: "We haven't used them [the Butterfly valves] very often only on this one dredge." The expert called by the plaintiff testified as follows:

"*Q.* Mr. Gilpin, is a Butterfly valve regarded nowadays as a safe valve to use?

"*A.* No; it is usually used as an emergency stop valve in steam practice to put in the main pipe to shut off the valve in an emergency, when an accident occurs, or a break in the pipe, to give them time to close the regular valves, as a rule.

"*Q.* It is used, then, in conjunction with a better valve?

"*A.* Oh, yes, yes; it is very uncertain, for the simple reason that it depends on the bearing; it is a disc that sets right in the centre of the line of direction of the flow of steam, and there is a stem that runs through it from one side to the other."

He further testified, in effect, that a double cylinder engine should not get on centre; that if it did, it proved a defect in

the engine, and that if the steam was shut off, and the engine started suddenly when pried off centre, it indicated a defective valve.

The use of this valve on the engine on the mudscow in question was attempted to be justified because of the necessity for a quick-acting valve, but that does not justify the master in using an improper valve.

In view of the testimony and its various legitimate inferences, we think there was at least a debatable question raised as to the negligence of the defendant.

The second and only remaining question for consideration is: Was the danger obvious to the plaintiff?

We think it quite clear from the evidence that the danger from the defective valve was not an obvious one. Nor is it clear from the evidence that the plaintiff had knowledge of the danger, or that by the exercise of reasonable prudence he should have had knowledge of it.

While a servant assumes the risk of injury from obvious defects or dangers, he does not assume the risk of injury from defects and dangers which are not obvious, and of which he had no knowledge and could not observe and know of by the exercise of ordinary care. *Comben* v. *Belleville Stone Co., supra; Atha & Illingsworth Co.* v. *Costello,* 34 *Vroom* 27.

There was testimony tending to show that the plaintiff had no knowledge of steam valves, or of how engines were constructed or operated, or of the mechanical principles involved, and that he had had no instructions concerning those matters.

Where there is a fair dispute in the evidence, or two classes of conclusions can reasonably be reached from it, whether the injury to the servant was the result of the failure of the master to exercise the care required to provide proper machinery and appliances for the use of the servant, or whether the injury was the result of obvious danger or risk to the servant, or the want of ordinary care on his part to observe dangers within his knowledge, or of which he ought to have known in the exercise of such care, then a case is made which should be submitted to the jury for their determination. *Comben* v. *Belleville Stone Co., supra.*

Tested by that rule, the present case was properly submitted to the jury.

An examination of the charge discloses that it was accurate and proper in all respects.

The result is that the judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, TRENCHARD, BOGERT, VREDENBURGH, GRAY, DILL, J.J.    11.

*For reversal*—REED, VROOM, GREEN, J.J.    3.