JOHN RAMSEY, PLAINTIFF IN ERROR, v. RARITAN COPPER
WORKS, DEFENDANT IN ERROR.

Argued June 22, 1909—Decided November 15, 1909.

1. It is the duty of the master to warn and instruct his servant as
to dangers of the employment of which he knows, or ought in the
exercise of reasonable care to know, and of which the master
knows or ought to know the servant has no knowledge, actual
or constructive.

2. Where there is evidence from which the jury may reasonably
find that the injured servant had no knowledge, actual or con-
structive, of the latent danger that necessitated certain precau-
tions for his safety in the use of instrumentalities furnished by
the master, it cannot be held as a conclusion of law that the
servant assumed the risk of injury resulting to him from their
absence.

On error to the Supreme Court.

For the plaintiff in error, *George S. Silzer.*

For the defendant in error, *Collins & Corbin.*

The opinion of the court was delivered by

TRENCHARD, J.  This writ of error brings up for review a
judgment upon a nonsuit ordered at the Middlesex Circuit.

The action was brought by John Ramsey to recover for
personal injuries sustained while at work for the defendant,
the Raritan Copper Works.

The gravamen of the action was the failure of defendant
company to warn and instruct the plaintiff of the dangers of
the work in which he was engaged, which were known to the
defendant and unknown to the plaintiff.

The evidence taken at the trial showed that the plaintiff,
a day laborer, had been employed in the smelting works of
the defendant for about a month prior to the accident.  He
was hired to wheel out refuse slag and dump it.  Some three
or four days before he was hurt, and because of the absence of

one of the "helpers," he was put to work as a "helper." That employment required him to break, with an iron crowbar, the molten slag that had been poured out from the refining furnace into a large pot or kettle, and was thence intended to flow through a trough into a smaller kettle, and then through another trough into a third and still smaller one. The object of running the slag from one kettle to another was to obtain the residuum of copper still remaining in the slag after it came from the refining furnace. The copper settles to the bottom of the kettles as it passes from one to another, and the material which finally reaches the smallest kettle is waste and is thrown away. As the slag flows from one kettle to another it cools, and it is likely to choke up the opening to the kettles, and to harden or form a crust on the top. To prevent this, crowbars six feet long were furnished with which the "helpers" break the crust on the top of the pots or the "choke-ups" at the openings. This was the work at which the plaintiff was engaged at the time of the accident. When put to work he was taught by the foreman how to handle the bar, how to break the crusts and how to move the "choke-ups." He was not warned of any danger incident to the work, nor was he told how to avoid danger. On the day of the injury, when the plaintiff drove the bar through the crust, there was an "explosion," and a stream of hot metal spurted out with great force, and struck the plaintiff in the eye, causing the loss of the eye. It further appeared that the plaintiff was instructed to "cool off the bars when they got red hot" in a tub of water which was furnished for that purpose. The plaintiff had observed the metal spurt, "a little bit," from the openings made by the bar while he was at work, but so far as the case shows, had noticed nothing which would suggest an explosion or danger from such spurting.

At the close of the plaintiff's evidence, the defendant moved for a nonsuit upon the ground—*first,* that no negligence upon the part of the defendant had been shown, and *second,* that the risk was an obvious one and was assumed by the plaintiff. The learned trial judge granted the motion upon the latter ground.

We think the nonsuit cannot be supported upon either ground.

It is the duty of the master to warn and instruct his servant as to dangers of the employment of which. he knows, or ought in the exercise of reasonable care to know, and of which the master knows or ought to know the servant has no knowledge, actual or constructive. *Tompkins* v. *Marine Engine, &c., Co.*, 41 *Vroom* 330; *Curley* v. *Hoff*, 33 *Id.* 758; *Lechman* v. *Hooper*, 23 *Id.* 253.

The evidence tended to show that the explosion or spurting which injured the plaintiff was caused by the crowbar being either wet or cold, and that knowledge that, when used in such condition, an explosion would result, was gained by experience. It was therefore certainly open to the jury to infer that the defendant company had knowledge, or ought in the exercise of reasonable care to have had knowledge, of the danger of an operation so conducted. The evidence also showed that the plaintiff was inexperienced at the work. He had been taken from his regular employment of wheeling waste material, and was put, three or four days before the accident, at the work at which he was hurt. The rule laid down in *Murphy* v. *Rockwell Engineering Co.*, 41 *Vroom* 374, to the effect that the master need not warn a servant of a risk naturally incident to the employment unless he knows that the servant is ignorant thereof, has no application to this case. In the case at bar, the defendant company recognized the plaintiff's inexperience. Its foreman instructed him how to handle the bar, how to break the crusts and how to move the "choke-ups," but he was not warned or instructed as to the danger of using a cold or. wet bar for that purpose. Such proof, together with the testimony of the plaintiff as to his want of knowledge, and that relating to his observations during the three or four days he was at the work, certainly would have warranted the jury in inferring both that the defendant company knew or ought to have known of the danger and that the plaintiff had no knowledge thereof, either actual or constructive. The question of the negligence of the de-

fendant company, therefore, should have been submitted to the jury.

We do not agree with the trial judge that the plaintiff, as a matter of law, assumed the risk.

It is of course true that a master is not bound to warn and instruct his servant as to dangers which are patent and obvious. These dangers the servant assumes: *Hesse* v. *National Casket Co., 37 Vroom* 652.

But the doctrine of assumption of risk is wholly dependent upon the servant's knowledge, actual or constructive, of the dangers incident to his employment. *Conway* v. *Furst, 28 Vroom* 645.

As we have seen, the plaintiff's work required that he break the crust which formed upon the molten metal with a crowbar. It was necessary, or certainly the practice to cool the bars from time to time by plunging them into a barrel of water. He was not instructed or warned that it was dangerous to use them while cold or wet. The evidence tended to show that such knowledge could only be obtained by instruction or experience. As we have heretofore pointed out the jury would have been justified in the conclusion that, up to the time of the accident, the experience of the plaintiff had not apprised him of the fact that an explosion of the metal could result from the use of the wet or cold bar. It was therefore erroneous for the trial judge to hold as a conclusion of law that the plaintiff had assumed the risk. *Burns* v. *Delaware and Atlantic Telephone Co., 41 Vroom* 745; *Dunne* v. *Jersey City Galvanizing Co., 44 Id.* 586.

The result is that the judgment of the court below will be reversed and a *venire de novo* awarded.

*For affirmance*—REED, J. 1.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, CONGDON, JJ. 13.