## Fricker *v.* Penn Bridge Company.

*Negligence—Master and servant—Place of danger—Proper appliances.*

In an action by an employee against his employer to recover damages for personal injuries where the plaintiff avers that the defendant was negligent in not providing sufficient men for the work or a suitable place in which to work, it is proper for the court to refuse to permit witnesses to testify as to what were the established rules in certain establishments where they had previously worked. The question in such a case is whether or not the defendant used ordinary care in the management of his business, and this is to be shown by the general customs of the trade, and not the particular practice of individuals.

*Negligence—Master and servant—Risk of employment.*

A servant or employee assumes all the risk of all dangers of his employment, however they may arise against which he may protect himself by the use of ordinary observation and care.

*Practice, Supreme Court—Assignments of error—Excerpts from charge.*

Excerpts from a charge are to be considered with the charge, and excerpts which ignore the parts of the charge immediately preceding and following them, are not reliable without inspection of the charge in its entirety.

Argued Oct. 15, 1900. Appeal, No. 2, Oct. T., 1900, by plaintiff, from judgment of C. P. Beaver Co., March T., 1898, No. 220, on verdict for defendant in case of John C. Fricker *v.* The Penn Bridge Company. Before McCollum, C. J., Mitchell, Fell, Brown and Mestrezat, JJ. Affirmed.

Trespass for personal injuries. Before Miller, P. J., specially presiding.

At the trial it appeared that plaintiff was employed by the defendant at its works in Beaver Falls in fitting up iron plates preparatory to their being riveted together. Plaintiff entered defendant's employment on August 20, 1897; he was injured on August 30, 1897. The rivets used in fastening the iron plates together were heated at a furnace and were thrown from the furnace to the riveting gang. Before throwing the rivets the boy at the furnace always gave warning, and he had instructions not to throw rivets until notice was given to him to do so by the riveting gang. The space between the furnace and the riveting gangs was about 100 feet on the average. About ten o'clock in the evening on August 30, while plaintiff was engaged with the fitting up gang, a rivet thrown from the furnace struck him in the eye, inflicting frightful injuries. The usual signals and warnings had been given before the rivet was thrown, and it appeared that nothing intervened to obstruct the plaintiff's view of the riveting gang or of the boy engaged in heating and throwing the rivets.

When George Parker, a witness for plaintiff, was on the stand, he was asked this question:

"Q. Can you tell us what is the established rule in those firms as to throwing of rivets, for the protection of the men?"

Objected to as incompetent and irrelevant.

Plaintiff's counsel offer to show by this witness, who has had experience in riveting under the same circumstances as existed in the mill in question, that wherever he has worked, a rule was established and maintained and insisted upon, by

the masters having charge thereof, that the fitting up men or any other men at work in the mill, shall not be allowed to work in between the riveters and the furnace from which the rivets are to be thrown. And in case it is necessary at any time to throw rivets any considerable distance, another boy is employed who is known as the "picker-up boy" whose duty it is to receive the bolts when thrown and see that the way is kept clear of men between the boy throwing and where he receives them, and see that the warning is given to all persons who might be called upon to pass between.

This for the purpose of showing that the defendant company did not employ sufficient men to conduct the business with safety to the men employed, nor adopt such rules and regulations as will protect their employees from all unnecessary risk and damage, thereby neglecting to provide the plaintiff in the discharge of his duty, which he was commanded to perform, with a suitable and safe place for so doing.

Objected to by defendant's counsel as incompetent and irrelevant, the issue here being as to the manner in which the defendant managed its particular business, the plaintiff having already testified that he knew the manner in which the work was done ; that he had seen, from time to time, the boy engaged in heating rivets and throwing the rivets to the riveting gang. That it matters not what the rule may have been in other places, he, knowing the facts here, assumed the necessary risks of his employment.

The Court: As the court views the question, it is not whether the defendants had the work in their establishment performed or conducted as in other establishments of like kind, but whether or not they used ordinary care in the management of their business. The offer is overruled and an exception sealed for the plaintiff. [1]

George Parker recalled by plaintiff.

By Mr. McConnel: Plaintiff's counsel offer to show by this witness, who has heard the testimony with reference to the circumstances accompanying the injury, and who is an expert, with twenty-three years' experience in bridge works and structural iron works, such as the defendant was engaged at, and is acquainted with the rules and regulations adopted in and by other companies, for the protection of their men from rivets, which

are thrown to the riveting gang, and that, in his opinion, the mere direction to Mittner to call out when he was going to throw a rivet would, under the circumstances, be insufficient instructions and would not protect the men, especially under the circumstances of this case. This for the purpose of showing that the defendant company had not established and promulgated rules sufficient for the reasonable protection of their employees, nor provided a safe place where the plaintiff could work. To be further followed by evidence showing that in bridge works and other factories where such structural iron is manufactured it is a universal rule that no men shall be allowed to work between the place where the rivets are heated and where the riveters are at work. And in case the riveters are at work where it is liable that any one will have occasion to pass between them and the boy who heats the rivets, that it is the universal rule to have a boy whose duty it is to see that the way between the boy throwing the rivets and the riveters is kept clear and pick up the rivets where thrown.

This for the purpose of showing that the defendant company had not furnished sufficient men to perform the labor required of them in the present case without unnecessary danger to the employees.

Objected to by defendant's counsel as incompetent and irrelevant. The question at issue in this case is not what is done in other shops, but whether or not the plaintiff, under all the circumstances of the case, had notice of the kind of work that was there being done, or under the circumstances of the case ought to have observed and known the danger. And under the testimony in this case, it being shown that the plaintiff did not look to see the danger when he had a full opportunity of seeing and knowing, it matters not what the custom may have been in other places. It is objected to further, for the reason that it would open up the way to produce evidence to show the custom in other shops. Furthermore, if proper at all, it would properly be their case in chief, which has already been decided by the court as incompetent and irrelevant testimony.

The Court: The offer is overruled and an exception sealed for the plaintiff. [2]

Defendant presented this point:

2. A servant or employee of a company assumes all the risks

of his employment, however they may arise, against which he may protect himself by the use of ordinary observation and care. *Answer:* Affirmed. [3]

The court charged in part as follows:

[Therefore it has come to be settled that the master may conduct his business in his own way, although another method might be less hazardous, and the servant takes the risk of the more hazardous method if he knows the danger attending the business in the manner in which it is carried on.] [4]

[The question for you to determine is: Could the plaintiff, by the exercise of ordinary prudence, have known where the riveting gang was working?] [5]

[You may conclude that young Mittner, the lad who heated the rivets and threw them to the riveting gang, was negligent in the throwing of the rivet at the time he did. It is undisputed but that the plaintiff and his colaborers were midway and in a direct line, between him and the riveting gang, he should not, in the opinion of the court, have undertaken to throw the rivet the distance he had to throw it, directly over the heads of the plaintiff and his fellows; the result of such attempt was the injury of the plaintiff. But the negligence of this lad, if you find he was negligent, is not to be imputed to the defendants, if they notified him to do what he said they did notify him. The boy was instructed to give warning before he threw a rivet. He had no instructions to throw the rivets over the heads of his fellow-laborers, and when he did so he, and not the defendant, would be responsible for any injury resulting therefrom to any of the employees of the company.] [6]

[The law is well settled and rightly too, that the master is not responsible for an injury inflicted negligently by one servant or laborer upon another servant or laborer.] [7]

[As we said at the outstart the danger was apparent and this is admitted by both parties. And when the plaintiff went there he assumed all the perils of the employment.] [8]

[A servant when employed by a master is only entitled to instruction as to such matters as are not patent to him, that are not easily observable by him by using his own observation. Where a servant is put in charge, for instance, of a machine that requires skill in the man operating it, or put in charge of

a machine that is dangerous when used by one who has no knowledge of it, it is the duty of the employer to instruct the servant regarding such employment. But where the danger is patent, as, for instance, a trip hammer, that when the employee in charge of it moves a trip it falls down, and if he would put his hand under it he would get it crushed, a servant would not need any instruction as to that. He would know that when the hammer would fall, if he would put his hand under it he would get it injured; in operating a machine like that, where the danger is so patent by one getting any portion of his body caught by it, would not require the servant to be instructed of the danger. In this case the rivets were thrown by the rivet boy to the riveting gang in whatever portion of the building the riveting gang was employed. The plaintiff says that he had seen, a few times, the boy throwing the rivets to the riveting gang; he does not say how many times, and that—

Mr. McConnel: He said he had seen that just a few times.

The Court: A few times. How many times that meant the court does not know, and perhaps you don't know, but he knew that was the way the rivets were delivered to the riveting gang, by his observation. We instructed you in the general charge that he was bound to know where the riveting gang was employed, if by the exercise of ordinary prudence he could know. You heard where the riveting gang was working, where the plaintiff was working, how near he came to them when he came in. You heard another witness who was working with him explain how near they were to him, and what he saw and what he heard; and if he could have seen them by using his observation, then he was bound, constructively, to see them, whether he saw them or not. Under those circumstances, he having seen the rivets delivered before this evening by the boy, knowing that the rivets were thrown by the boy to the riveting gang, knowing that they must pass in a direct line from the boy to the riveting gang, if he could have known where the riveting gang was, and he placed himself in a direct line between the heating furnace where the rivets were heated and from where they were thrown and the reveting gang, it is not necessary that any person should tell him that was a dangerous place which he occupied. Any one would know that. It ought not to require any instruction to inform one of that,

Mr. McConnel: That would be providing he knew they were using rivets at the time. They may have been in a shape to move them somewhere else.

The Court: If he knew that the riveting gang was there it was his duty to know whether or not they were using rivets. He was not bound to continue his work in a dangerous position, but when he found himself within the line of the heating furnace and the riveting gang, and didn't know whether they were going to throw rivets or not, he had the right to stop work until he informed himself. That was his duty, if he didn't know when he got in that position; and we say to you that as to such danger as that which is patent to any one who will use his senses, instruction is not necessary.

Is there anything else, gentlemen, that you wish to ask the court? If any one of your number wish to ask a question you can do so and the stenographer will take it down.] [9]

[If he knew that the riveting gang was there, it was his duty to know whether or not they were using rivets.] [10]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (3–10) above instructions, quoting them.

*William A. McConnel*, with him *William H. Cox*, for appellant.—The employer did not provide a suitable and reasonably safe place for the doing of the work performed by the plaintiff, nor did it supply a sufficient number of laborers to perform it without unnecessary risk or peril, and by reason of this negligence the plaintiff was injured: Allison Mfg. Co. v. McCormick, 118 Pa. 519; Titus v. Bradford, etc., R. R. Co., 136 Pa. 618; Vinton v. Schwab, 32 Vt. 614.

It is competent to show, in order to aid the jury in determining whether the defendant had exercised reasonable care in providing and·maintaining machinery and appliances actually in use, what other kinds of machinery or appliances were used elsewhere, and might have been used at the time and place in question: Iron Ship Building Works v. Nuttall, 119 Pa. 149; Georgia Pacific Ry. Co. v. Propst, 83 Ala. 518; Kolsti v. Minn. & St. Louis Railway Co., 32 Minn. 134; Murphy v. Greely,

146 Mass. 196; Louisville & Nashville R. R. Co. v. Hall, 87 Ala. 708; Bannon v. Lutz, 158 Pa. 166.

The plaintiff had a right if his case was left to the jury, to have it submitted by the judge calmly and impartially: Burke v. Maxwell, 81 Pa. 139; Tietz v. Phila. Traction Co., 169 Pa. 516; Schwenk v. Kehler, 122 Pa. 67; Reber v. Herring, 115 Pa. 599; Gerz v. Weber, 151 Pa. 396.

*J. R. Martin* and *J. C. Martin*, for appellee, were not heard. —Whatever is according to the general, usual and ordinary course adopted by those in the same business is reasonably safe within the meaning of the law: Kehler v. Schwenk, 144 Pa. 348; Titus v. Bradford, etc., R. R. Co., 136 Pa. 618.

Per Curiam, October 31, 1900:

This is a suit by an employee against his employer to recover damages for an injury which he alleges he received through the negligence of the latter. The evidence in the case was submitted to the jury under instructions from the court which resulted in a verdict in favor of the defendant. On appeal to this court it was claimed that there was error in the rulings referred to in the first and second assignments, in the answer to the defendant's second point, and in the excerpts from the charge in the fourth to the eleventh assignments inclusive. We are not convinced of error in the rejection of the offers of evidence which constitute the subject of the first and second assignments, or in the affirmance of the defendant's second point. In the eight excerpts from the charge nothing appears which can be construed as error. It is well to remember, however, that the excerpts are to be considered with the charge, and that the excerpts which ignore the parts of the charge immediately preceding and following them are not reliable without inspection of the charge in its entirety.

Judgment affirmed.