ELIZABETH E. DURAND, ADMINISTRATRIX OF OSCAR DURAND, DECEASED, DEFENDANT IN ERROR, v. THE NEW YORK AND LONG BRANCH RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued December 5, 1900—Decided March 4, 1901.

1. An employe assumes all the risks of his employment against which he may protect himself by ordinary observation and care.
2. The refusal of a trial judge to charge the jury a request which does not embody either in express legal terms, or in those of equivalent effect, a correct proposition of law pertinent to the case, is not error, and an effect not inherent in the terms themselves will not, after verdict, be imparted to them by a reviewing court.
3. A request to charge that "even if the switch target was insufficient, yet if, from his running so many years past it while in this condition, the plaintiff's intestate knew, or *should have known*, of its defective condition, he is held in law to have assumed the risk of its insufficiency and the defendant in that case is relieved from responsibility for it," is not a sound legal proposition, but is erroneously broad and indefinite in that it fails to define with sufficient precision the degree of care or observation which the law requires of the intestate before the consequences of knowledge of the defective condition of the signal may be imputable to him, or he be chargeable in law with an assumption of the risk of its insufficiency.

On error to the Supreme Court.

For the plaintiff in error, *Applegate & Hope* and *Alan H. Strong.*

For the defendant in error, *Hawkins & Durand* and *Robert H. McCarter.*

The opinion of the court was delivered by

VREDENBURGH, J.   In the opinion of a majority of the court the defendant's fifth request of the learned trial judge to charge the jury was properly refused. This leads to an affirmance of the judgment. As to the other features of the

case, the dissenting opinion of Judge Adams (previously prepared, but intended to be filed coincidently herewith) is acceptable to and adopted by the court. That opinion so lucidly and compactly states the material facts, the legal situation of the case, and the proper construction to be placed upon the various bills of exception brought up by the writ other than the one where, as above stated, the opinion of the majority of this court diverges, that any restatement of such matters here would, I think, be but useless repetition. The particular subject seeming to call for the expression of a different conclusion from that reached by the opinion referred to relates entirely to the construction placed by it upon the sufficiency of the defendant's bill of exceptions to the refusal of the trial justice to charge the defendant's fifth request. That request was framed in the following words, viz.: "5. Even if the switch target was insufficient, yet if, from his running so many years past it while in this condition, Mr. Durand knew, or *should have known,* of its defective condition, he is held in law to have assumed the risk of its insufficiency and the defendant in that case is relieved from responsibility for it." The force given, by the opinion just spoken of, to the meaning of the words of such request, *"should have known,"* is that which would be attributed to the expression "should, by the use of due care, have known;" and that the first quoted words, when fairly read or understood in their connection, present a sound proposition. To this construction we cannot agree. That the request does not, at least in its *expressed* terms, present a sound proposition of law is fully demonstrated by the same opinion where it states the legal rule to be "that an employe assumes the ordinary risks incident to his employment, and also risks consequent upon special dangers *known to him, or which he could have discovered by the use of due care."* I think that in actions of this class it must be conceded to be the law in this state that either knowledge by an employe of dangers attending the prosecution of his work, or his failure to exercise ordinary or reasonable care to obtain knowledge, will prevent recovery in his behalf of damages resulting to him

therefrom. *Western Union Telegraph Co.* v. *McMullen,* 29 *Vroom* 155; *Comben* v. *Belleville Stone Co.,* 30 *Id.* 226; *Atha & Co.* v. *Costello,* 34 *Id.* 27.

A briefer, but sufficient, statement of the general legal rule, and one more directly pointed toward the facts of the case in hand, which I find upheld by excellent authority, is the following, viz.: "That an employe assumes *all* the risks of his employment against which he may protect himself by *ordinary observation and care."* The rule is stated recently in a similar form by Thomas' work on *Negligence* (ed. 1895) 837, supported by authorities there given. See also *Fricker* v. *Pennsylvania Bridge Co.,* 47 *Atl. Rep.* 354 (*Penna. Sup. Ct., October,* 1900), viz.: "A servant who enters into an employment which is hazardous assumes the usual risks of the service, and those which are apparent to *ordinary observation;"* or again, on *p.* 841, "a servant who enters upon an employment from its nature hazardous assumes the usual risks and perils of the service, and of the open, visible structures known to him, *or which he must have known had he exercised ordinary care and observation,"* citing *Williams* v. *Delaware, Lackawanna and Western Railroad Co.,* 116 *N. Y.* 628, and other cases; or again, on *p.* 842, "a servant is chargeable with actual notice of every fact which he *could have known* had he exercised *ordinary care to keep himself informed* as to matters concerning which it was his duty to inquire." See also *Wood M. & S.* 732, and 1 *Shearm. & R. Negl.* (*4th ed.*) 375. A large number of cases are, on this last page, cited in support of substantially the same rule, including the case of *Johnson* v. *St. Paul, &c., Railroad Co.,* 43 *Minn.* 53, and other cases I shall not take space to cite, except *Perigo* v. *C. R. I. & P. Railroad Co.,* 52 *Iowa* 276, holding that it is now the established doctrine that an employe. who knows, or, by the exercise of *ordinary diligence,* could know, of any defects or imperfections in the things about which he is employed is presumed to have assumed all the consequences resulting from such defects. I do not find it in any authority stated to be the rule of law that the employe or servant of a railroad company is bound to a higher than *ordinary* degree

of care in informing himself of defects in appliances used on railroads for signals or warnings of danger; his duty therein is to use ordinary care, and whether or not he has used such degree of care is for the jury to settle. In the case of *Riley* v. *Railway Co.,* 27 *W. Va.* 145, 150, the instruction to the jury expressly defines this rule as to a brakeman. The late case of *Young's Administrators* v. *Syracuse, B. & N. Y. Railroad Co.* (decided by the Court of Appeals of New York in March, 1901, and officially reported in the advance sheets of volume 166, page 227, of the reports of that court), involved a state of facts so remarkably similar to the present case that it should not be overlooked. The plaintiff's intestate was a railroad engineer, and was killed while running the defendant's express train through an open switch and thence crashing into freight cars standing upon the side track. It did not appear that the engineer had actual knowledge of the practice used in operating the switch, although he had been in defendant's service for more than ten years before the accident. There was evidence that, in consequence of the construction of a water-tank and the location of the switch signals, the view of the deceased was so obstructed that he could not see the red light that indicated that the switch was open until he was too close to stop the train (going at from thirty-five to forty miles an hour) in order to avoid passing through the open switch. The switch was so constructed that it displayed automatically a white target by day and a white light by night when closed and safe to the main track, and a red target by day and a red light by night when open to the side track. The suit was dismissed by the trial court and judgment of nonsuit directed on the ground that the deceased assumed the risk of the dangers resulting in his death, since he had the same knowledge of the location of the switch with reference to the water-tank that the defendant had, and if the place was dangerous, due to the fact that the switch signals were concealed, as described, he knew what the situation was and assumed the risk. This dismissal was reversed by the Appellate Division of the Supreme Court and the reversal was affirmed by the Court of

Appeals. The negligence chiefly urged in the New York case against the defendant as ground for recovery, was that they had not employed a switchman to take charge of the switch, and that, in consequence, the accident had occurred, and the Court of Appeals held that question, together with that of the obscuration of the switch target by another structure and, necessarily, the whole case, should have been submitted to the jury. In the case at bar, the particular negligence complained of was that the defendant maintained a defective switch signal, by reason whereof, and the concealment of that signal by another structure, the accident had resulted—in the *one* case, the absence of a switchman to guard and to give proper warning; in the other, the absence of a blade of a target to give proper warning. Two more closely analogous occurrences involving the question of the degree of care to discover open switches required of railroad engineers could hardly have happened, and it is significant to observe that so distinguished a court of last resort as the Court of Appeals of New York has held, in a case nearly identical in its facts with the case at bar, that the question of the assumption of such risks by the engineer was, under proper instructions from the court, one for the jury to determine. In either and in every statement of the rule found in the text-books and decisions of courts of authority the idea of *ordinary* care, expressed either in those or correlative or equivalent words, has invariably formed a part of the definition of the legal duty of such employe in observing such defective conditions. The request in question entirely fails to embrace the idea both of care generally and of the degree of care demanded of the engineer in obtaining knowledge of the defect of the switch signal previous to the accident. Stripped of this concept, the request propounded is too broad, has no legal boundaries, and becomes a waif without lawful parentage. While it may be conceded that the word "should" implies the performance of some obligation or duty owing by the deceased to his employer, yet the degree of care with which that obligation or duty is by law required to be performed is not a necessary implication therefrom.

The law exacted from the deceased only ordinary observation or care in obtaining previous knowledge of the defects of this signal target, and it seems clear that the trial court would have erred if it had charged the jury in the language of the request, because from that language the jury would have had as much right to infer that the deceased was bound, as a matter of legal obligation, to exercise a higher than ordinary degree of care in ascertaining the prior defective condition of the target, as to infer that he was but to use only due or ordinary care therein. The trial justice, therefore, properly refused to charge as requested, and since the whole case was placed by him properly and without legal error within the province of the jury, their verdict should stand and the judgment thereon be affirmed.

ADAMS, J. (dissenting). The plaintiff's intestate, Oscar Durand, was an experienced locomotive engineer in the employ of the Central Railroad Company of New Jersey. At the time of his death he was about sixty-five years old. On the morning of February 4th, 1899, it became his duty to run the engine that drew a passenger train from Jersey City to Point Pleasant, in the county of Ocean. He had been engineer of this train for twenty years. It was a clear day. The train was due at Point Pleasant at ten minutes before eleven o'clock in the forenoon, and was a few minutes late. At a point a few hundred yards north of the Point Pleasant station a switch was open, by which the train was turned from the main track to a siding, where the engine collided with ice cars. By this collision the engineer was killed. The action was brought by his administratrix to recover damages resulting from his death.

It appears that the roadbed, track and appliances at the locality of the accident were the property of the New York and Long Branch Railroad Company, and were used by the Central Railroad Company under a written agreement which, among other things, made the New York and Long Branch Railroad Company liable for any damages occasioned by "the failure of its roadway, or the appurtenances thereto." The

cause of action alleged in the declaration is that the defendant company was bound, under this agreement, to provide and maintain proper signals at switches, and that it failed in this duty, in that it provided and maintained a defective signal at the switch where the accident occurred. In consequence of this defect in the signal, it is alleged, the engineer did not have due notice that the switch was open, and so without fault ran his train on the siding and met his death. To this declaration the New York and Long Branch Railroad Company pleaded the general issue. The case went to the jury, who gave the plaintiff a verdict for $5,000. The case comes up on exceptions to the admission and exclusion of evidence, to a refusal to nonsuit, to a refusal to direct a verdict for the defendant, to certain features of the charge, and to refuse to charge as requested.

The main line of the railroad in the vicinity of the accident runs north and south. It is a double track road. The train was moving along the southbound or west track. At a point about five feet west of the west rail of the southbound track there stood a signaling apparatus, operated in connection with a switch that afforded entrance to and exit from a siding leading to an ice-house that stood on the west side of the railroad. This apparatus was one of a sort in use along the line of this railroad. It appears beyond a reasonable doubt that an apparatus of this kind, when complete, consists of a central upright rod about seven feet high, to which are attached four perpendicular panels of sheet-iron, at right angles to one another, painted alternately red and white. It results from this arrangement that panels in the same plane are of the same color. White means safety; red means danger. Each panel is two feet six inches long and six inches wide. When the main line is clear the white panels are presented to the eye of the engineer of an approaching train. When the switch is opened the signaling apparatus is, by the same mechanism that opens the switch, revolved through a quarter of a circle, so that the red panels are presented to the eye of the engineer of an approaching train. The revolution of this particular apparatus, when moved from the

position that shows safety to the position that shows danger, was in a direction opposite to the revolution of the hands of a clock. Consequently the red panel that had pointed south at safety would point east at danger. When the switch was closed this motion was reversed, and the apparatus resumed its original position.

The signaling apparatus was incomplete, for it had only one red panel. It had been thus incomplete for several years. The testimony is in conflict as to whether the apparatus, when set for danger, was incomplete on its east side or on its west side. The trial judge treated this incompleteness as a defect. This was correct. Whether this defect was injurious to the plaintiff's intestate is another question. It is apparent that the effect of it, when the apparatus was set for danger, was to diminish by one-half the area of the warning color. It is apparent, also, and the evidence shows it, that a switch-tender whose duty it was to manipulate the combined switch-ing and signaling mechanism would naturally know of the defect in the apparatus; that an engineer whose duty called upon him to use the switch would be likely to notice the defect, and that an engineer who did not use the switch would not be so apt to observe that a red panel was missing, especially if it was missing from the side of the apparatus that, when the southbound track was clear, would face the south.

This being the situation, the proof on behalf of the plaint-iff was addressed to the question whether the defect in the apparatus was, in a legal sense, injurious to the engineer. Some of the propositions that the evidence for the plaintiff was adduced to establish were these: That at a point one hundred and twenty-three feet north of the defective sig-naling apparatus at the ice switch there was, at another switch, a complete signaling apparatus of the same kind, at the same distance from the west rail of the southbound track; that these two mechanisms were, to the eye of the engineer of a southbound train, to some extent and at some distance or distances in alignment; that, just to that extent, the remoter object was concealed by the nearer one; that

when the signaling apparatus at the ice-house siding was set for danger, the concealment or blanketing of that signal by the more northerly apparatus was, by reason of the absence of one of the red panels, greater than it would otherwise have been, especially if the missing panel was the one that, if it had been present, would have pointed east, and so been nearer than the other to the southbound track; and that the concealment of the defective danger signal thus occasioned by the defect was the proximate cause of the accident. The existence and location of the more northerly signaling apparatus were undisputed. The testimony on behalf of the plaintiff tended to establish the other propositions. The testimony on behalf of the defendant tended either to disprove them, or so to minimize the concealment or eclipse of the defective apparatus as to point to the conclusion that the accident would not have happened if the engineer had been vigilant. Another question was whether the engineer, if he had used due care, would have seen the break in the line of the west rail of the southbound track occasioned by the open switch. This whole matter was evidently one of fact for the consideration of the jury.

On behalf of the defendant it was further insisted that it clearly appeared that the defect was obvious, and that the engineer must be held to have acquiesced in it. But, as before stated, it depended on circumstances whether, and to what extent, the defect was obvious to any particular individual. It was for the jury to say whether the deceased, if he had been careful, would have known that a red panel was missing. *Comben* v. *Belleville Stone Co.,* 30 *Vroom* 226. The trial judge properly refused a request to charge that, as a matter of undisputed or indisputable fact, the defect was obvious to this engineer.

Another exception brings under review a part of the charge that, if it stood by itself, might mislead. The trial judge said: "Another allegation of negligence in the deceased is that he did not use the means at his command to stop the train when he perceived the danger. The defendant's counsel put it, when he ought to have perceived the

danger; but it seems to me on this branch of the case that we must look at this action as of the time when he did perceive it." It is true, in a sense, that a man is not to be blamed because he does not try to protect himself against a danger that he does not perceive. This is so in all cases where the danger is undiscoverable by due care, and even when the danger is discoverable by due care, and is not discovered, the blame, strictly speaking, attaches not to the failure to protect, but to the failure to perceive. The trial judge may have meant only this. His language, however, was open to misconstruction. The jury might naturally have understood him to direct their attention to the knowledge of danger that the engineer had, and to exclude from their consideration the knowledge of danger that the engineer did not have, but which, if he had been vigilant, he would have had. A man situated as he was assumes the risk of danger that he perceives, or, in the exercise of due care, should perceive. This distinction between what is known and what ought to be known was the ground of decision in the recent case of *Atha & Illingworth Co.* v. *Costello,* 34 *Vroom* 27. In that case the charge limited the dangers of which an employe assumed the risk to those arising from facts known to him. This was held to be too narrow a statement of the rule. But any misconception that may have been occasioned by the language above quoted was corrected when the trial judge subsequently charged, in the language of the seventh request, that if the engineer, by the exercise of the degree of care proper to the business in which he was engaged, could have seen that the switch was open (either from the target or from the opening in the rail) at a distance which would have enabled him to avoid a collision, the plaintiff could not recover.

It is well to say why the refusal of the eighth and ninth requests to charge, and of part of the tenth request, was proper. The judge was asked to instruct the jury that the plaintiff could not recover if the engineer's failure to use the means at hand for stopping the train permitted the collision to occur with a violence that it would not otherwise

have had.  These requests assumed, as a standard, the shock of a collision that might occur if the engineer was careful, and asked the judge to tell the jury that if the engineer carelessly occasioned a surplus of shock he was contributorily negligent.  Such an instruction would have been aside from the point of the case.  The grievance complained of is death, not collision, and the exact question as to contributory negligence was not whether one impact is more violent than another, but whether the engineer's carelessness was in any degree productive of his own death.  These requests were properly refused.

A further and more serious question was raised by the fifth request to charge, which asked for this instruction: "That even if the switch target was insufficient, yet if, from his running so many years past it while in this condition, Mr. Durand knew, or should have known, of its defective condition, he is held in law to have assumed the risk of its insufficiency, and the defendant in that case is relieved from responsibility for it."  The trial judge refused to charge as requested, and to this refusal an exception was taken, on which error has been assigned.  In the opinion of a majority of the court this request was properly refused.  I am unable to concur in this conclusion.

An employe assumes the ordinary risks incident to his employment, and also risks consequent upon special dangers known to him, or which he could have discovered by the use of due care.  *Comben* v. *Belleville Stone Co.*, 30 *Vroom* 226; *Western Union Telegraph Co.* v. *McMullen*, 29 *Id.* 155; *Atha & Illingworth Co.* v. *Costello*, 34 *Id.* 27.  This rule applies to the case in hand, for although the engineer was the servant not of the defendant but of the Central Railroad Company, yet a contract gave the engineer the right to run over the New York and Long Branch railroad, and made the defendant specifically liable for damages occasioned by failure of its roadway or appurtenances.  The language of the request that is above quoted is elliptical.  What is meant by "should have known?"  The word "should" in this connection is a word of obligation.  The opinion of the court

concedes this. Of what kind of obligation? Is it social obligation, or moral obligation, or legal obligation? As the issue relates to legal right and legal duty, it is plain that the obligation which the word imports is legal obligation. What was the legal obligation that rested on the engineer? It was to use care. Fairly read, in the light of this obligation, the words "should have known" mean, should, by using due care, have known. No other possible meaning is suggested. It would puzzle ingenuity to find one. Thus understood, the request is a sound proposition, and was recognizable as such by the trial judge. This being so, it was the right of the defendant to have the request charged, if not in its very terms, at least in substance, accompanied, of course, if the trial judge should think fit, by any comment or explanation that might aid the comprehension of the jury. The request was met by a bare refusal. An examination of the charge shows that the instruction that was thus asked for and refused was nowhere in substance given. Nor was the request open to the criticism that it culled out from the case a partial set of facts and asked for a deduction therefrom. This way of formulating requests is objectionable, because it dislocates a case by taking its elements out of their natural relation. It has been often disapproved. *Consolidated Traction Co.* v. *Chenowith,* 29 *Vroom* 416; *Consolidated Traction Co.* v. *Haight,* 30 *Id.* 577. Here, as the maintenance of a defective apparatus was the very breach of duty complained of, a legal proposition dealing with such defect was not partial, but went to the bottom of the case.

It is objected that the request does not define the degree of care that the engineer was bound to use. This is true. Is the request therefore erroneous? If, instead of reading, "should have known," it had read, should, by using due care, have known, it would escape criticism. Yet by the latter statement, no less than by the former, the degree of care is left undefined. Due care is merely the care that is due, be it much or little. How much is due, in a particular case, is another thing. A general proposition, complete in itself, is not defective because it is not also a special proposition.

The question as to the degree of care incumbent upon the engineer was a subordinate matter that might well receive separate consideration. The request, by the natural sense of its terms, embodies an undeniable primary proposition, namely, that if the engineer either actually knew of the defect in the apparatus, or should have learned of it in the fulfillment of his legal obligation to be vigilant, he must take the consequences.

This request bore upon an important phase of the defence of contributory negligence. Although the trial judge refused it, he by no means left the jury without instruction as to the subject of contributory negligence. Indeed, on this topic the charge was unusally full and explicit. The jury could not fail to receive from it a definite and correct impression as to the degree of care that the law exacts from the engineer of a locomotive. I find no warrant for the suggestion that the request, if it had been charged, might have misled the jury in this particular.

From these considerations I conclude that the refusal to grant the fifth request was error for which the judgment should be reversed.

*For affirmance*—THE CHIEF JUSTICE, VAN SYCKEL, FORT, BOGERT, VREDENBURGH, VOORHEES.    6.

*For reversal*—THE CHANCELLOR, DIXON, GARRETSON, HENDRICKSON, ADAMS.    5.