JOHN M. COFER, PROSECUTOR, v. JOSEPH A. CORIO, JUDGE OF ATLANTIC COMMON PLEAS, RESPONDENT.

Argued October 16, 1933—Decided January 30, 1934.

Before Justices PARKER, LLOYD and PERSKIE.

For the prosecutor, *William I. Garrison.*

For the defendant, *Clifford A. Baldwin* (*Charles P. Brewer,* on the brief).

The opinion of the court was delivered by

PARKER, J. The writ brings up an order dated July 28th, 1933, in the Atlantic Common Pleas and made by Judge Corio, refusing the application of Cofer for discharge as an insolvent debtor.

The action is wrongly entitled. The proper defendant is the Court of Common Pleas as custodian of the record. This is the settled practice. *Sutterly* v. *Common Pleas,* 41 *N. J. L.* 495; *Beitzel* v. *Common Pleas,* 48 *Atl. Rep.* 1013; *Moore* v. *Common Pleas,* 68 *N. J. L.* 229; *Sozio* v. *Common Pleas,* 74 *Id.* 63; *Board of Health* v. *Common Pleas,* 83 *Id.* 392. Similarly a writ of *mandamus* is addressed to the court. *Sandford* v. *Common Pleas,* 36 *Id.* 72; *Ricardo* v. *The Court of Common Pleas,* 38 *Id.* 182.

Passing this point, however, we proceed to the question argued, which is, the correctness *vel non* of the order of refusal.

It is asserted in the brief of prosecutor that he was arrested on a *capias* and gave bond; that judgment went against him, and that he was surrendered to the sheriff by his sureties in February, 1932; that he made application under the Insolvent act and filed the usual inventory, and list of creditors, the matter came on to be heard, and the court refused a discharge; that this was followed by a second application and refusal, and later by a third application and a third refusal. This last is brought up by the writ.

There is no proof of the alleged earlier applications except the affidavit of prosecutor, which has spent its force and is unavailable (*State* v. *Gardner,* 34 *N. J. L.* 327, 329), and the

order itself, together with a short certificate of the trial judge. The error assigned in the reasons is that the application was refused on the theory of *res adjudicata,* and that in such a proceeding that rule is inapplicable; in other words, that the petitioner may repeat his application indefinitely, term after term, without alteration of the inventory, or (as we understand the argument) of the evidence. Disregarding the affidavit, we find that the order recites "and it appearing that under two prior orders of this court similar applications of the said John M. Cofer were refused and that no new matter is presented to the court for its determination under the said petition of March 14th, 1933, and the inventory accompanying the same;" and the certificate states: "Upon examining the file in this cause and it appearing that the said insolvent debtor had on two former occasions been refused his discharge in this court I refused to hear, consider or examine into the truth and justice of the petition, or to consider or examine the truth and fairness of the account and inventory exhibited before me, I refused to propound interrogatories to the said insolvent debtor or to permit interrogatories to be propounded to him and I did thereupon make an order that the matter was *res adjudicata* and remanded the said insolvent debtor to the custody of the sheriff of Atlantic county, by him to be placed in the custody of the keeper of the jail of said county there to remain until discharged by the further order of this court." The fact of the two previous petitions and refusals therefore sufficiently appears. What is not so clear, is the identity of the former petitions and inventories with the petition and inventory submitted on the third application. The order says that the former applications were "similar" and that "no new matter is presented." The refusal is expressly based on the "plea of *res adjudicata*" filed by a creditor, whose counsel argue for the respondent. However, it is not pretended for the prosecutor that the third inventory, petition and list of creditors provided in sections 2 and 6 of the Insolvent Debtors' act (*Comp. Stat., p.* 2824 *et seq.*) differed in any way from the first and second. The proposition is that on papers identical, except in date, applications may continue

indefinitely until the importunity of the petitioner has an effect similar to that in the parable. For this, the case of *Koch* v. *Burpo,* 91 *N. J. L.* 116, is cited as authority. In a very careful and learned opinion by the late Mr. Justice Kalisch, he holds that a debtor who is refused a discharge "may make any number of *new* applications." And this, which was approved by the Court of Errors and Appeals in *Koch* v. *Costello,* 93 *Id.* 367, suggests the important, and to us the determinative question in the case. The word "new" occurs several times in the statute. Placitum 17-b (*Comp. Stat., p.* 2831, a supplement of 1875—*Pamph. L., p.* 18) enlarges or changes section 15, which permitted a "second application," and provides that the debtor may deliver to the sheriff a "new inventory and a new bond" and thereupon be discharged, and "shall be entitled to make a new application * * * and the same proceedings shall be had * * * as if no previous application had been made."

In *Koch* v. *Costello, supra,* a decision in which all three of the judges sitting in Koch *v.* Burpo participated and concurred, the court said (at *p.* 375) : "But does the right to make subsequent applications give the debtor the right so to apply on the identical state of facts adjudged against him on his last prior application?" and (at *p.* 376) : "Although the testimony taken in the Common Pleas Court is not before us, it would seem as though the proofs on both of these applications must have been substantially the same, because the issues in both were identically the same; and this would have made the matter *res adjudicata* against the petitioning creditor on his second application, unless section 17 (b) of the Insolvent Debtors' act means that a person imprisoned may repeat any number of applications to the Court of Common Pleas on identically the same facts and have each application passed upon *de novo,* which may well not be so. It would seem that if an insolvent debtor on his first application is denied his discharge because he had failed to make a true, perfect and complete inventory, or had fraudulently removed goods from the state and the jurisdiction of the court, or had fraudulently concealed assets, one or more of these, he would be obliged on

his second application to add to the inventory anything omitted, and add to his list of creditors the names of any who had been omitted, with the sums due to them, so as to make a novel case for the court to pass upon, or else be met with a plea of *res adjudicata*.

It is true that the foregoing remarks were *obiter,* and the point was expressly reserved; but the remarks unanimously concurred in by fifteen judges of the court of last resort, *obiter* and indecisive though they may be, are not lightly to be passed over. We know of no reported case in which a second application has been identical with the first in every respect except dates and similar formalities. The question is therefore *res novo*. It is worthy of note, however, that in *Sozio* v. *Essex Pleas,* 74 *N. J. L.* 63, already cited, the "new petition" was filed "with an amended inventory."

The question, then, is this: What is a new application, based on a new inventory and a new bond? Can it be, and should we hold, that the legislature intended to allow a debtor incarcerated for fraud, or a defendant in confinement on a claim of damages for some heinous tort, to concoct a fraudulent assignment with a fraudulent statement of assets as a basis for discharge from his bond, and after that fraud has been exposed and adjudged, and discharge refused, to allow that debtor to reiterate the same performance indefinitely until creditors and court are alike tired out? But such must be the logical result in many cases of a holding that the word "new" justifies a mere repetition *ad nauseam* of the first application. In our view, it connotes on the contrary some reasonably substantial difference between the old and the new application, for the most part in the matter of assets and liabilities though not necessarily exclusively so. The language of the Court of Errors and Appeals in Koch *v.* Costello, quoted above, is adequate and illuminating on this point.

The Pleas was not required by the statute to rehear indefinitely the old application with a new date. The writ is dismissed, with costs.

Perskie, J. (Dissenting.) I cannot concur in the result reached by my learned colleagues.

I do not think that such matters as the comforts or discomforts or particular physical reactions of creditors and court alike have any place in or application to the instant case.

The specific question presented on this writ is whether the plea of *res adjudicata* is available under our Insolvent Debtors' act. The answer depends entirely upon the construction and application of this act.

Section 2 of our act concerning insolvent debtors (2 *Comp. Stat.*, p. 2824) provides, *inter alia:*

"* * * and that the said defendant *will in all things comply with the requirements of the said insolvent laws, and will appear in person at every subsequent court, until he or they* shall be duly discharged as an insolvent debtor; * * *."

Section 17 (b) of the same act also provides, that, if "* * * the said court shall fail or refuse, for any reason, to discharge such person as an insolvent debtor, as provided in said laws, and such person, upon such refusal, shall surrender himself immediately to the sheriff or keeper of the jail of said county, it shall be lawful for such person thereupon to make out and deliver to such sheriff or keeper *a new inventory and a new bond as and in the manner, and of the tenor and effect mentioned in the second section of the said act* to which this is a supplement; whereupon such person shall be discharged from the custody of such sheriff or keeper; *and he shall be entitled to make a new application to said court for his discharge under the said act, and the same proceedings shall be had for that purpose, as fully and effectually as if no previous application has been made.* Rev. 1877, p. 505."

It seems quite obvious that the debtor may be refused a discharge "*for any reason*" and such reason, of course, need not necessarily be one relating to the inventory. For instance, he may not personally appear, or his bond may not be proper, or he may have committed perjury in answering interrogatories, &c. Supposing the debtor's holdings remained unchanged at each subsequent application is he to be deprived of the benefits of the act merely because the last inventory, the accuracy of which is not questioned, chances to be identical with the inventory accompanying the first or any subsequent appli-

cation? Let us further suppose a case in which the debtor had no assets of any kind to inventory other than the apparel covering his body. He so inventories it—he continues to remain in that impecunious position—is he to be deprived of the benefits of the act? I do not think so. Such a construction would mean life imprisonment for a civil debt. I think that the statute was enacted to safeguard a debtor from such a situation.

It is fundamental that a statute should be construed as to suppress the mischief and advance the remedy. *Randolph* v. *Larned,* 27 *N. J. Eq.* 557. It is urged that section 33 of the Insolvent Debtors' act and chapter 124 of *Pamph. L.* 1925, *p.* 347, safeguard the debtor. I do not think that this is so. The aforesaid legislation merely enlarges the debtor's space of imprisonment. It is imprisonment none the less. It seems to me that it utterly fails to cure the inherent evil in the result reached by the majority, namely, that of sanctioning the imprisonment of an insolvent debtor for life.

In the case of *Koch* v. *Burpo,* 91 *N. J. L.* 116, Mr. Justice Kalisch for the Supreme Court held (at *p.* 122) :

"The term 'new application,' being contained in a remedial statute, must be liberally and beneficially construed."

*"As the remedy provided by the statute makes against hardship and oppression and for humanity and liberty, the widest scope will be given to the language used, in order to carry out* what appears to be the legislative intent." (Italics mine.)

"Therefore, to give proper effect to the act and to carry out the legislative intent, we think that an insolvent debtor, who has been refused his discharge for any cause, may make any number of new applications."

"And it is obvious that if we hold otherwise, it would be, in effect, sanctioning the imprisonment of an insolvent debtor for life, if he failed upon his second application to obtain his discharge."

As already indicated the statute entitles the insolvent debtor to make a *new application* and the same proceedings are to be held for that purpose *as fully and effectually as if no previous application has been made.* What is a "new"

application? Bouvier's Law Dictionary (Rawle's Third Edition, page 2337) defines the word "new" as follows: "This term in its ordinary acceptation, when applied to the same subject or object, is opposite of old." The instant application of the insolvent debtor, his last application, surely was a new application within the aforesaid definition. Conversely all applications prior to the last one were old applications.

For the foregoing reasons I am of the opinion that the court below was in error and that its order of July 28th, 1933, should be set aside.